A91A1885. DAWSON CONSTRUCTION COMPANY, INC. et al. v. GEORGIA STATE FINANCING & INVESTMENT COMMISSION.
(417 SE2d 190)

POPE, Judge.

In June 1985, plaintiff/appellant Dawson Construction Company, Inc. ("Dawson") entered into a construction contract (the "Contract") with defendant/appellee Georgia State Financing and Investment Commission ("GSFIC") to renovate the Old State Office Building owned by GSFIC (the "Project"). On March 2, 1988, Dawson submitted Periodical Estimate No. 29 seeking to be paid $1,065,057.16 for work performed at the Project and retainage.

On March 4, 1988, Tom Dawson, president of the construction company, met with Bill Roberts of the GSFIC to review various claims filed by Dawson and its subcontractors seeking damages for a series of delays at the Project allegedly caused by defective plans and specifications prepared by GSFIC's architect. Two of the subcontractors who had claims pending at this time were Hays Heating & Plumbing Company ("Hays") and Ralph A. Davis Construction Company, Inc. ("Davis"). Another subcontractor, Centin Corporation, had not yet filed a claim but did so later. During this meeting, GSFIC apparently asserted claims against Dawson in the amount of $593,126

allegedly caused by Dawson's defective or unfinished work on the Project. At the end of the meeting, both parties agreed to defer negotiation of their respective claims until a later date. Tom Dawson claims that at no time during the meeting did Bill Roberts dispute the amount of money claimed by Dawson in Periodical Estimate No. 29.

On March 9, 1988, GSFIC sent Dawson a check in the amount of $863,599.06 made payable to Dawson and its surety. The back of the check contained an endorsement which read: "NEGOTIATION OF THIS CHECK CONSTITUTES PAYMENT IN FULL OF ITEMS LISTED ON THE VOUCHER." The accompanying voucher provided: "FINAL PAYMENT EXCEPT FOR THE SUM OF $200,000.00 WITHHELD FOR INCOMPLETE WORK." An accompanying memorandum quoted from Article E-25 (b) of the Contract as follows: "Acceptance of the final payment shall operate as and shall be a release to the owner from all claims of any kind or character under the contract except for such specific amount or amounts as may have been withheld to cover the fair value of any incomplete work, which has been certified by the architect under the provision of Paragraph (d) of Article 5 of the Form of Agreement as incomplete through no fault on the part of the contractor." The bottom of the memorandum also noted that $200,000 was being withheld for incomplete work.

On March 11, 1988, Dawson wrote Bill Roberts a letter seeking confirmation of the agreement reached during the March 4 meeting to defer review of outstanding subcontractor claims. Dawson also noted that despite the conditional language on the voucher and memorandum providing that the check represented final payment except for $200,000 withheld for incomplete work. Dawson was not, by accepting the check, waiving its right to assert the various claims for damages by Dawson and its subcontractors.

On March 15, 1988, Mr. Roberts wrote to Dawson stating that during the March 4 meeting, Dawson agreed to give up one of its claims, referred to as the "granite claim," if GSFIC paid a substantial portion of the retainage being held by GSFIC. According to the letter, it was in reliance on this agreement that GSFIC paid Dawson $863,599.06 as final payment less the sum of $200,000 withheld for incomplete work. GSFIC went on to deny certain of the pending subcontractor claims, but specifically noted that the claims made by Hays and Davis were considered still pending. After reminding Dawson that GSFIC also had unresolved claims against the construction company in the amount of $595,126 for defective or unfinished work on the Project, GSFIC offered to execute a mutual release or covenant not to sue if the parties agreed to settle their claims against each other. In such case, GSFIC would issue Dawson a check for the re-

maining $200,000 of retainage. Neither party acted on this proposal.

After Dawson received Robert's March 15 letter, it deposited the March 9 check first marking out the language on the back. GSFIC argued in support of its motion for summary judgment that Dawson's acceptance of the March 9 check constituted an accord and satisfaction of all claims by Dawson and its subcontractors, except the claims made by Hays and Davis. The alleged accord and satisfaction included Dawson's claim for the balance of retainage requested in Periodical Estimate No. 29 in the amount of $200,000.

On August 8, 1988, Dawson wrote GSFIC requesting one-half of the $200,000 retainage being withheld for incomplete work. On August 18, 1988, GSFIC issued Check No. 4123 payable to Dawson and its surety in the amount of $100,000. The back of the check contained the same conditional language as on the March 9 check referencing the voucher. The accompanying voucher provided: "FINAL PAYMENT EXCEPT FOR THE SUM OF $100,000.00 WITHHELD FOR INCOMPLETE WORK." The memorandum accompanying the check and voucher stated that the memorandum supplemented the March 9 memorandum, and that $100,000 was being withheld for incomplete work. GSFIC argued in support of its motion for summary judgment that Dawson's acceptance of the August 18 check constituted an accord and satisfaction of Hays' and Davis' claims, the only remaining claims under the Contract. Thus, it is GSFIC's contention that an accord and satisfaction occurred in two parts, each covering separate and independent claims which, taken as a whole, encompassed all of Dawson's claims on behalf of itself and its subcontractors.

On October 5, 1988, Dawson wrote GSFIC requesting payment of the remainder of the retainage and asked GSFIC to make a decision about the pending claims of Dawson and its subcontractors. On November 18, 1988, Bill Roberts responded by letter, stating that he had reviewed the claims of Dawson's mechanical and drywall subcontractors with GSFIC's architect and was denying them. (Although the record is not clear, Hays appears to be the referenced mechanical subcontractor, and Davis, the referenced drywall subcontractor.) The letter further provided: "We are anxious to make final payment as soon as possible. Final payment will be made promptly after all requirements of the contract have been met." One of the requirements for final payment set forth in the letter was the delivery of a final certificate from the architect. On June 26, 1989, Dawson provided GSFIC with a statutory affidavit, but GSFIC never paid any further money to Dawson. Thereafter, Dawson, for itself and on behalf of Hays, Davis and Centin Corporation, which by this time had filed a claim against GSFIC for delay damages, brought this action to recover damages against GSFIC. GSFIC answered the complaint and

raised as one of its defenses, accord and satisfaction. GSFIC also filed a counterclaim against Dawson for damages incurred by GSFIC as a result of Dawson's incomplete and defective work on the Project.

On August 16, 1989, two days after GSFIC's answer in this action was filed, GSFIC sent Dawson a third check in the amount of $90,770.73 made payable to Dawson and its surety. This time the accompanying voucher and memorandum contained the following language: "FINAL PAYMENT AND SETTLEMENT OF ALL CLAIMS AND SUITS EXCEPT FOR THE SUM OF $7,500.00 WITHHELD FOR INCOMPLETE WORK." Thus, three checks were tendered by GSFIC containing the language "final payment." The third check was never negotiated by Dawson and was eventually returned to GSFIC at the request of GSFIC's attorney, after the attorney notice GSFIC's counterclaim in the action exceeded the amount of the check.

GSFIC moved for summary judgment on Dawson's complaint based on its affirmative defense of accord and satisfaction. Relying on *Wood Bros. Constr. Co. v. Simons-Eastern Co.*, 193 Ga. App. 874 (389 SE2d 382) (1989), the trial court granted GSFIC summary judgment, ruling that because the March 9 and August 18 checks along with the accompanying vouchers and memoranda contained language denoting payment in full, "there appears to be no issue of material fact concerning the requisites of an accord and satisfaction being met in this case."

On appeal, Dawson claims the trial court erred in granting summary judgment to GSFIC because genuine issues of material fact exist as to: (1) whether there was a passage of benefit, advantage or consideration to Dawson, as a result of the purported accord and satisfaction (OCGA § 13-4-102); (2) whether there as a bona fide dispute as to the amount due Dawson which was communicated to Dawson (OCGA § 13-4-103 (b) (1); (3) whether there was a meeting of the minds as to which of Dawson's claims were encompassed by the purported accord and satisfaction (see *State Farm Fire &c. Co. v. Fordham*, 148 Ga. App. 48 (2) (250 SE2d 843) (1978)); (4) whether the conditional language used on the three checks met with the requirements of OCGA § 13-4-103 (b) requiring "payment in full" or language of equivalent condition be placed on checks; (5) whether GSFIC presented evidence of satisfaction of the purported accord (OCGA § 13-4-103 (a)); and, (6) whether GSFIC waived the effect of any purported accord and satisfaction by its subsequent actions (see *Motorola Communications &c., Inc. v. South Ga. &c. Gas Co.*, 104 Ga. App. 376 (2) (121 SE2d 672) (1961)).

1. We first reject Dawson's arguments (1), (2), (4) and (5), above, in accordance with our holding in *Wood Bros. Constr. Co. v. Simons-Eastern Co.*, supra.

2. We next consider Dawson's argument (3), that a question of

fact remains as to whether there was a meeting of the minds between GSFIC and Dawson as to which of Dawson's claims were encompassed by the accord and satisfaction asserted by GSFIC. "Like any other contract, accord and satisfaction requires a meeting of the minds as to the subject matter embraced therein, if it is to be valid and binding. [Cits.] Where there is no agreement to settle all matters in dispute, no accord and satisfaction result. [Cits.] Moreover, parol evidence is admissible to show the scope of the agreement that forms the basis of the alleged accord and satisfaction. [Cit.]" *Wallace v. Harrison*, 166 Ga. App. 461, 464 (2) (304 SE2d 487) (1983). This court has also held "[a]n accord and satisfaction may be made between contracting parties pro tanto. If the contract is of such a nature as to give rise to separate and distinct demands or to create a number of separate obligations and cross-obligations, and a number of distinct breaches as to these separate obligations occurs, the parties may make an accord and satisfaction, or what in law amounts to an accord and satisfaction, as to one or more of these demands, without affecting the others." (Punctuation and citations omitted.) *State Farm Fire &c. Co. v. Fordham*, supra at 52.

In *Wood Bros. Constr. Co. v. Simons-Eastern Co.*, supra, relied on by the trial court, GSFIC and the contractor entered into a construction contract to build a wood energy system plant at Central State Hospital. Various change orders and delays caused the construction to be delayed approximately six months past the scheduled date. After extensive correspondence between the contractor and GSFIC failed to resolve the contractor's claims for delay damages, the contractor notified GSFIC of its intent to file a claim for damages. The contractor submitted a statutory affidavit for final payment as required under the construction contract; however, it was qualified by a reservation of the contractor's right to file a claim for delay damages and recover payment for completion of grassing. GSFIC responded by notifying the contractor that final payment would not be made until the contractor furnished an unqualified statutory affidavit. A few months later, the contractor submitted a request for final payment in the amount of $73,308.49, and GSFIC issued a check for the specified amount even though the contractor had not submitted an unqualified affidavit. The check, which provided that it represented "final payment except for the sum of $2,000.00 withheld for completion of grassing," was delivered to the contractor by its surety. A letter accompanying the check indicated the check was tendered in satisfaction of all debts existing under the contract. While the contractor's president was in a meeting and unable to look at the check, his bookkeeper endorsed and deposited the check in the contractor's account. Two months later, GSFIC denied the contractor's subsequent claim for delay damages, asserting that final payment had already been made.

In *Wood Bros.* we held that the evidence was clear that a bona fide dispute existed between GSFIC and the contractor as to the amount the contractor was due altogether. Because GSFIC tendered a check to the contractor as full satisfaction of all claims asserted by the contractor, the contractor's "acceptance and deposit of the check made upon condition carried with it the acceptance of the condition, and thus worked an accord and satisfaction. [Cit.]" Id. at 876. We also held the circumstances of the contractor's endorsement and acceptance of the check did not create an issue of fact as to whether there was an understanding between the parties that acceptance of the check represented full payment of the debt.

In the case sub judice, we are also presented with a situation where a contractor and its subcontractors filed claims with GSFIC for damages due to delays incurred on a project. As in *Wood Bros.*, GSFIC tendered a check to the contractor representing "Final payment except for the sum of $. . . withheld for incomplete work" which ultimately was accepted by the contractor. However, unlike *Wood Bros.*, Periodical Estimate No. 29 did not seek final payment, so when Dawson received the March 9 check marked "final payment," the contractor immediately sought clarification from GSFIC as to the meaning of the conditional language. Dawson deposited the check only after Mr. Roberts stated that the March 9 check represented final payment under the Contract of the amount of $863,599.06 with $200,000 being withheld for incomplete work and that GSFIC still considered Hays' and Davis' claims pending.

Furthermore, unlike the circumstances present in *Wood Bros.*, in this case, GSFIC sent Dawson a second check representing "final payment except for the sum of $100,000 withheld for incomplete work," after Dawson requested GSFIC to pay one-half of the remaining retainage. The check, voucher and accompanying memorandum failed to mention, in any way, that the check was intended to satisfy Hays' and Davis' claims. We therefore conclude that under these circumstances, a question of fact exists as to Dawson's understanding of the subject matter embraced by the alleged accord and satisfaction.

We also note that in October 1988, when Dawson sought payment of the balance of the retainage requested in Periodical Estimate No. 29, GSFIC apparently did not *itself* embrace its present position that the March 9 and August 18 checks had already satisfied in full all Contract claims because on November 18, 1988, Roberts expressed a desire to make yet a third "final payment" under the Contract. In fact, GSFIC tendered a third check marked "final payment" eight months later, which check contemplated yet a fourth "final payment" in the amount of $7,500, when work on the Project was completed. Robert's November 1988 letter also stated that GSFIC had considered and rejected the claims by Dawson's mechanical and drywall

subcontractors, another indication that GSFIC did not, at that time, embrace its present position that the subcontractor claims had already been satisfied by the August 18 payment to Dawson.

As a general rule, whether there is an accord and satisfaction is a question for the jury. *Pierce v. Taylor*, 190 Ga. App. 819, 820 (2) (380 SE2d 351) (1989). Moreover, because GSFIC moved for summary judgment based on the affirmative defense of accord and satisfaction, GSFIC as a defendant undertook "to discharge a treble burden: not only that ordinarily imposed upon the proponent of an affirmative defense, but a second burden that requires the movant for summary judgment to establish that there exist no material issues of fact in the case, and yet a third that requires the movant who is also the defendant affirmatively to negate one or more essential elements of the case made out by [the plaintiff]. [Cits.]" *Wallace v. Harrison*, 166 Ga. App. 461 at 464-465 (2). The fact that so many different checks were issued purporting to be the "final payment" in the Contract creates an issue of fact concerning what the parties intended by issuing and negotiating these checks. In our view, GSFIC failed to meet its burden of presenting clear evidence from which, as a matter of law, it could be determined that GSFIC's tender and Dawson's acceptance of the March 9 and August 18 checks were made pursuant to a mutual understanding that all of Dawson's claims under the Contract were being satisfied.

3. We also conclude that a material question of fact exists in regard to Dawson's argument (6), as to whether GSFIC's conduct subsequent to its tender of the March 9 check, including the tender of two additional checks marked "final payment' and GSFIC's consideration of subcontractor claims which supposedly had already been satisfied, waived the effect of the purported accord and satisfaction. "[A]ccord and satisfaction may be rescinded by agreement, or waived by acts or conduct of a party thereto, whereby the debt would be restored to its original status. [Cit.]" *Motorola Communications &c., Inc. v. South Ga. &c. Gas Co.*, supra at 381. Consequently, the trial court's grant of summary judgment to GSFIC was error.

*Judgment reversed. Birdsong, P. J., and Cooper, J., concur.*

DECIDED MARCH 10, 1992 —
RECONSIDERATION DENIED APRIL 1, 1992 —

*Shapiro, Fussell, Wedge & Smotherman, Ronald J. Garber, David L. Tank*, for appellants.

*Michael J. Bowers, Attorney General, Lawson & Davis, G.*

*Thomas Davis*, for appellee.

