A93A2242. EMORY RENT-ALL, INC. v. LISLE ASSOCIATES
GENERAL CONTRACTORS, INC.
(441 SE2d 926)

ANDREWS, Judge.

Emory Rent-All appeals the trial court's grant of a directed verdict to Lisle Associates after a bench trial. Emory Rent-All contended that Lisle Associates had breached an extended warranty agreement. The trial court concluded that there was no consideration for the extension of the warranty and held it to be a mere nudum pactum and void.

1. While the parties below and the court treated the motion as one for a directed verdict, since there was no jury and the court sat as factfinder, the ruling will be treated as an involuntary dismissal under OCGA § 9-11-41 (b), which operates as an adjudication upon the merits. *Century 21 Mary Carr &c. v. Jones*, 204 Ga. App. 96, 97 (418 SE2d 435) (1992). Therefore, the court's findings are analogous to those of a jury and the evidence is so viewed by this court.

So viewed, the evidence showed that Lisle Associates and Emory Rent-All entered into a written construction contract providing that Lisle would build a new office building for Emory. The total project cost was $135,730. The contract provided for a down payment and then biweekly payments of 90 percent of the labor and material incorporated in the job. The payment provision contained the following retainage clause: "[b]alance upon acceptance of the completed building or occupancy, whichever comes first."

The original warranty, part of the contract, provided for a five-year warranty on the roof and a one-year "repair and replace" warranty for the remainder of the building for "defective material and workmanship."

Also a part of the contract was the blueprint of construction, which provided for a concrete retaining wall reinforced with steel.

During construction and before completion and acceptance of the project, Sanford, president of Emory Rent-All, noticed that this retaining wall was bulging and cracking. Acknowledging problems with the wall, Lisle tore down part of it and "attempted to fix it." Sanford acknowledged that, "[i]f that wall [as repaired] had been satisfactory," he would have owed the retainage at the completion of the re-

mainder of the construction. However, after this repair and upon tender of the final request for payment by Lisle of the $18,000 retainage in September 1988, Sanford objected to paying the full amount because of "[s]ome paving problems and wall problems."

On October 7, 1988, the document extending the five-year warranty coverage to the retaining wall as well as the roof was executed by Lisle and Sanford and a check for $4,634.10 was issued to Lisle. That this check represented the full ten percent retainage for the retaining wall is shown by the fact that, on November 14, 1988, Sanford wrote Lisle a letter reflecting their agreement to deduct $2,975 from the final payment to settle out the defective paving dispute. Sanford stated that "I accepted the extension of the warranty for the money I retained in lieu of being satisfied as to the condition of the wall at that point in time."

On March 6, 1989, still within the initial one-year warranty period, Sanford notified Lisle by letter that the retaining wall, subject to the extended warranty, had begun to "crack and lean." In 1992, the wall completely fell, Lisle refused to repair it, Sanford had it repaired, and sued under the extended warranty for the cost of the repair.

2. First, the issue of whether, at the time the extended warranty was entered into, payment of the retainage was even due under the clear terms of the contract, was, at a minimum, in dispute at the conclusion of Emory's case, even viewing all the evidence in favor of Lisle.

Under the original contract, the retainage was not due until Emory accepted or occupied the building, thereby acknowledging that the building, in the opinion of the owner, complied with the requirements of the contract and the plans and specifications. Acceptance of the work by the owner is, under the terms of the contract, a precondition to the obligation to release the retainage. *Olympic Constr. v. Drywall Interiors*, 180 Ga. App. 142, 144 (2) (348 SE2d 688) (1986); see *Dawson Constr. Co. v. Ga. State Financing &c. Comm.*, 203 Ga. App. 625, 629 (2) (417 SE2d 190) (1992).

It is not disputed that, even after the initial repairs, Sanford contended that the wall, as repaired, did not live up to the contract requirements. Therefore, by accepting the building in less than "contract status," Emory provided consideration for the "new" extended warranty in return for paying the contested retainage. Compare *Owings v. Ga. R. Bank &c. Co.*, 188 Ga. App. 265 (372 SE2d 825) (1988).

3. Even assuming there was doubt on this question, " '[a] compromise of a dispute is binding on the parties . . . The law favors compromises, and a promise made in extinguishment of a doubtful claim is sufficient to support a valid contract. . . .' [Cits.]" *Smith v. Haverty Furniture Co.*, 173 Ga. App. 447, 448 (326 SE2d 812) (1985). Compare *Topa Ins. Co. v. Acree*, 209 Ga. App. 234, 235 (433 SE2d

518

312) (1993); *Warren v. Jenkins*, 190 Ga. App. 442, 443 (1) (379 SE2d 19) (1989); *Dover Realty v. Butts County Bd. of Tax Assessors*, 202 Ga. App. 787 (2) (415 SE2d 666) (1992).

*Judgment reversed. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED MARCH 18, 1994.

*Zachary & Segraves, William E. Zachary, Jr.*, for appellant.
*Webb, Tanner & Powell, Anthony O. L. Powell, Steven A. Pickens*, for appellee.