## A98A0742. SMITH v. STUCKEY.
### (503 SE2d 284)

POPE, Presiding Judge.

Appellees W. S. Stuckey, Jr., Lynda Stuckey Franklin (the "Stuckeys") and Citizens Corporation ("Citizens") sued appellant Hal M. Smith, Jr., for specific performance of a stock option agreement, or in the alternative for a declaratory judgment. A jury granted the Stuckeys and Citizens specific performance under the agreement and awarded them attorney fees in the amount of $14,687.75. Smith appeals from the denial of his motions for directed verdict on the ground that the stock option agreement was void under the rule against perpetuities. He also appeals the trial court's denial of his motion for directed verdict on the issue of attorney fees.

In 1984, Stuckey Timberlands, Inc. began soliciting options to purchase shares of Citizens Bank & Trust Company (the "Bank") at a price of $1,700 per share. Smith gave Stuckey Timberlands an option to purchase 92 of his 292 Bank shares. After Stuckey Timberlands acquired enough options to purchase 90 percent of the 2,000 out-

standing shares of the Bank, it assigned the options to Citizens. The Stuckey family are the shareholders of Citizens, a holding company formed for the purpose of acquiring the Bank.

Before Citizens' acquisition of the Bank could be completed, the holders of 38 shares of the Bank's stock who had previously indicated that they would be willing to sell their shares elected to retain them. Smith agreed to sell an additional 38 of his shares so Citizens could acquire a total of 1,800, or 90 percent, of the outstanding shares. This left Smith with a total of 162 shares.

In connection with these transactions the Stuckeys and Smith negotiated an agreement regarding the disposition of Smith's remaining Bank shares. Smith was concerned that the price he received upon the sale of his shares might be discounted due to his minority status. The Stuckeys for their part eventually hoped to acquire control through Citizens of all the Bank stock.

Under the parties' agreement, Smith was granted the option after January 29, 1988, to compel the Stuckeys to purchase, through Citizens, Smith's remaining Bank stock. The agreement also gave Citizens the option to purchase Smith's stock at any time after January 29, 1995. The agreement contained no time limitation for exercising the options, but did specify a formula for determining the purchase price on the exercise of either option.

Smith never exercised his option under the agreement, but Citizens notified Smith by letter dated February 7, 1995, that it intended to exercise its option to purchase Smith's shares. The parties disagreed, however, over the price to be paid for the stock. After the parties were unable to resolve their differences, Citizens attempted a tender under the agreement. Smith refused the tender, contending that it did not reflect the proper purchase price under the option agreement.

The Stuckeys and Citizens sued Smith for specific performance under the option agreement, or in the alternative, asked the court for a declaratory judgment of the parties' rights. After discovery, each side moved for summary judgment, but the trial court denied both motions. In denying Smith's motion, the trial court rejected his argument that the rule against perpetuities (the "Rule") barred enforcement of the option agreement.

At trial Smith made two motions for directed verdict at the close of the evidence presented by the Stuckeys and Citizens, and later renewed the motions at the close of all the evidence. In one motion Smith reasserted his prior argument that the agreement was void under the Rule. In his other motion Smith argued that there was no evidence to support an award of attorney fees. The court denied these motions.

1. The first issue to be addressed is whether the Rule[1] applies to the parties' stock option agreement. The law in Georgia is unclear as to whether the Rule is applicable to property other than interests in real estate. In one 80-year-old case, the Supreme Court of Georgia found a trust deed conveying stock to be invalid under the Rule. *Shewmake v. Robinson*, 148 Ga. 287, 288 (96 SE 564) (1918). In that case, a father transferred stock in trust to his son for the benefit of his son's wife during her life, or "for any future wife of (the son), and any children that may be born to him by his present or any future wife. . . ." Id. at 287. The Supreme Court held that the conveyances to a subsequent wife, and any children of such wife, were too remote and thus void under the Rule. Id. at 288.

But in later cases, the Supreme Court has declined to apply the Rule to property or rights that do not represent an interest in real estate. See *Southern Airways Co. v. DeKalb County*, 216 Ga. 358 (116 SE2d 602) (1960) (declining to apply the Rule to a usufruct); *Reeves v. Comfort*, 172 Ga. 331 (157 SE 629) (1931) (holding that the Rule did not apply to restrictive covenants). And more recently, the Supreme Court has questioned the "wisdom and legal logic . . . for extending the rule's applicability to a commercial setting . . . as "[t]he rule came into being in order to control family property transfers which limited the rights of certain generations to alienate property." *St. Regis Paper Co. v. Brown*, 247 Ga. 361, 362 (276 SE2d 24) (1981).

While the Supreme Court's later decisions raise strong doubt as to whether the Rule should be extended to personal property, we are bound under *Shewmake* to assume that the Rule would apply to the parties' stock option agreement. See also *Bagwell v. Henson*, 124 Ga. App. 92, 93 (183 SE2d 485) (1971) (in which this Court stated that the Rule "applies equally to real estate and personal property," while construing an option to repurchase buildings and improvements on another's land).

2. Even assuming the Rule applies, however, we hold that "there was no attempt here to affirmatively create a perpetual right to exercise the option . . .; but there was only the absence of a time limitation . . . [and in such circumstances Georgia courts have] held that

---

[1] Although Georgia adopted the Uniform Statutory Rule Against Perpetuities in 1990, OCGA § 44-6-200 et seq., this case arises under an earlier version of the Rule because it involves an interest created prior to May 1, 1990. OCGA § 44-6-205 (1).

The earlier statute, which was repealed when the uniform rule was adopted, provided, "Limitations of estates may extend through any number of lives in being at the time when the limitations commence, and 21 years, and the usual period of gestation added thereafter. The law terms a limitation beyond that period a perpetuity and forbids its creation. When an attempt is made to create a perpetuity, the law will give effect to the limitations which are not too remote and will declare the other limitations void, thereby vesting the fee in the last taker under the legal limitations." OCGA § 44-6-1 (a), repealed by Ga. L. 1990, p. 1837, § 1, effective May 1, 1990.

the optionee had a reasonable time in which to exercise the option." *Brown v. McInvale*, 118 Ga. App. 375, 376 (163 SE2d 854) (1968). *Young v. Cass*, 255 Ga. 508 (340 SE2d 185) (1986) (implying a reasonable time to give notice under an option agreement); *Read v. GHDC, Inc.*, 254 Ga. 706 (334 SE2d 165) (1985) (implying a reasonable time to perform under a real estate sales contract); *Shiver v. Benton*, 251 Ga. 284 (304 SE2d 903) (1983) (implying a reasonable time for a right of first refusal agreement); *Kirkland v. Odum*, 156 Ga. 131 (118 SE 706) (1923) (implying a reasonable time under a lease for right to turpentine timber).

In *Brown*, this Court considered whether the Rule barred enforcement of a stock option agreement that contained no time limitation for the exercise of the option. We held that the *Brown* agreement, which provided that the option could be exercised upon the expiration of 24 months, "must be exercised immediately upon the expiration of the twenty-four months or within a reasonable time thereafter." *Brown v. McInvale*, 118 Ga. App. at 376. Similarly, we read the option agreement in this case to provide that Citizens must exercise the option immediately after January 29, 1995, or within a reasonable time thereafter.

Smith argues that this case is distinguishable from *Brown* because the parties' option agreement provides that it is binding upon the Stuckeys and their heirs "so long as [they] own or [their] heirs own any shares of stock of Citizens Corporation" and also that it is binding upon Smith and his heirs. We do not read this language as establishing a time period for the exercise of the options or as intending to create a perpetuity. Rather, this language simply provides that should one of the parties die during the reasonable period allowed under the agreement, the options are enforceable against that party's heirs. Accordingly, this case may be distinguished from those cases cited by Smith in which the parties' agreement evidenced an intent to create a perpetuity. See, e.g., *Thomas v. Murrow*, 245 Ga. 38, 39 (262 SE2d 802) (1980) (involving an option to purchase at any time after the "undersigned or their heirs and assigns cease to operate a (cotton) gin. . . ."); *Turner v. Peacock*, 153 Ga. 870 (1) (113 SE 585) (1922) (involving a "perpetual" option to purchase land).

"Having construed the [stock option agreement] as requiring performance within a reasonable time, we take an additional step and find that twenty-one years would be unreasonable and that the contract therefore does not create a perpetuity" in violation of the Rule. *Read v. GHDC, Inc.*, 254 Ga. at 706.[2] Accordingly, the trial

---

[2] In this instance, Citizens notified Smith by letter dated nine days after the option first became exercisable under the parties' agreement and ten years after the parties signed the agreement. It appears, therefore, that Citizens' attempt to exercise its option was within the

court correctly denied Smith's motion for directed verdict under the Rule.

3. However, we reverse the trial court's denial of Smith's motion with regard to attorney fees. A review of the record shows the existence of a bona fide controversy[3] as to the issue of the purchase price to be paid under the agreement. The agreement defined the purchase price to include a calculation of "the product of 200 times 1.18 multiplied by the book value of each share of stock in Citizens Bank & Trust Company as shown on its most recent call report filed with the Federal Reserve Bank of Atlanta (or its successor)." The parties' dispute centered around what was meant by the term "book value." Smith contended that the term should be interpreted under FDIC requirements in existence at the time the agreement was signed in 1985, while the Stuckeys and Citizens contended that the term should be interpreted under current FDIC requirements, which included a 1994 change affecting the calculation of book value.

" 'The existence of such a bona fide controversy would preclude a recovery of OCGA § 13-6-11 attorney's fees on the theory that [Smith] had been stubbornly litigious or caused [the Stuckeys and Citizens] unnecessary expense, notwithstanding that the jury ultimately resolved the controversy in favor of [the Stuckeys and Citizens]. [Cits.]' " *Pulte Home Corp. v. Woodland Nursery &c.*, 230 Ga. App. 455, 457 (496 SE2d 546) (1998). *Williams Tile &c. Co. v. Ra-Lin & Assoc.*, 206 Ga. App. 750, 752 (426 SE2d 598) (1992) (reversing denial of motion for directed verdict on attorney fees where bona fide controversy existed).

Nor does the record contain any evidence of bad faith to support the award of attorney fees. " '[I]t is well settled that the "bad faith" contemplated by (OCGA § 13-6-11) is bad faith "connected with the transaction and dealings out of which the cause of action arose," rather than bad faith in defending or resisting the claim after the cause of action has already arisen. [Cits.]' " *Brown v. Baker*, 197 Ga. App. 466, 467 (398 SE2d 797) (1990). "The record reveals that, although there was evidence of [Smith's failure to accept the tender], 'there was insufficient evidence of [Smith's] bad faith in entering into the [option agreement] or [the] performance thereof. There was no showing that [Smith] acted through ill will or furtive design with regard to the performance of the contract. Since there was no evi-

---

reasonable time allowed by the parties' agreement. See *Shiver v. Benton*, 251 Ga. at 288 (holding that party's attempt to enforce their rights under agreement signed 11 years earlier was within reasonable time).

[3] Smith also correctly argues that a bona fide controversy exists as to whether the stock option agreement was void under the rule against perpetuities. As that issue was decided by the court prior to trial, the jury was unaware of this controversy when it made its findings.

dence from which a jury could find that the contract was made in bad faith or that [Smith] breached it as a result of some sinister motive, the award of attorney's fees cannot be sustained on the basis of bad faith. . . . " *Pulte Home Corp. v. Woodland Nursery &c.*, 230 Ga. App. at 458. Accordingly, the trial court erred in denying Smith's motions for directed verdict on the issue of attorney fees.

*Judgment affirmed in part and reversed in part. Ruffin, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 8, 1998 —
RECONSIDERATION DENIED JUNE 26, 1998 —

*Phears & Moldovan, Victor L. Moldovan, Richard E. Harris*, for appellant.

*Martin, Snow, Grant & Napier, John T. McGoldrick, Jr., William K. McGowan*, for appellee.