A04A1244. RICE et al. v. LOST MOUNTAIN HOMEOWNERS ASSOCIATION, INC. et al.

(604 SE2d 215)

ELDRIDGE, Judge.

J. Andrew Rice and Kathryn W. Rice, who are pro se appellants, own a home in the Lost Mountain Township subdivision, which was developed in three phases; they lived in Phase III. They appeal from a final injunction brought against them by the Lost Mountain Homeowners Association, Inc. ("LMHA") for constructing and maintaining an 11-foot-high white vinyl stockade type fence in violation of restrictive covenants applicable to their house. The Rices challenge the standing of LMHA and of the applicability to them of the restrictive covenants. Finding no error, we affirm.

LMHA created under its bylaws the Architectural Control Committee ("ACC") for the Lost Mountain Township subdivision. On June 8, 1989, the original developers created LMHA, which the Rices contend was only for Phase I. The Rices contend that on May 15, 1987, the developers created Lost Mountain Township Association, Inc. ("LMTA") to govern the covenants for Phase II and Phase III. In October 2000, the Rices created as the sole owners, officers, and shareholders a rival Lost Mountain Township Homeowners Association, Inc. ("LMTHA"). However, in 1996, by a majority vote of all lot owners in the entire Lost Mountain Township subdivision, including Phases I, II, and III, LMHA and its ACC were designated the governing entity for the Township.

The Rices purchased their lot in Phase III and throughout the period prior to the litigation, they acted as if LMHA and its ACC were the governing entities for the entire subdivision. They paid the assessed homeowner's association dues to LMHA, attended LMHA meetings, and corresponded with LMHA. The Rices tendered their architectural submissions for review and approval by the ACC of LMHA. In 1999, as the governing entity for the subdivision, LMHA sold a parcel of land and distributed the proceeds to all residents of the Lost Mountain Township subdivision, which included the Rices.

On June 7, 2002, LMHA sued the Rices for violating the restrictive covenants. On September 13, 2002, Larry Cox, Mark Lindsey, and Kathryn Rice, acting as the ACC, sought to intervene; however, on August 3, 2001, the interveners were given authority by only one of the two defunct developer corporations, which sold the last lot in 1996. Therefore, the developer's authority over the subdivision ceased as a matter of law in 1996 after the last lot was sold. "A developer of a subdivision who reserved the authority to waive restrictions in covenants running with the land no longer possesses that authority after divesting himself of his interest in the subdivision." *Armstrong v. Roberts*, 254 Ga. 15, 16 (325 SE2d 769) (1985).

On April 24, 2003, after a bench trial, the trial court entered its final order that the fence comply with the covenants, from which the Rices now appeal.

1. The Rices' motion to disqualify and strike the brief of appellees is denied.

2. The Rices contend that the trial court erred as a matter of law in finding that LMHA and its ACC had standing to bring the suit against them.

(a) The Rices claim lack of standing in LMHA not because it is a noncorporation, but because it was created to govern Phase I only and not to govern Phases II and III. The question is whether or not LMHA and its ACC had authority to govern the entire Lost Mountain Township subdivision consisting of all homes in Phases I, II, and III. The covenants applicable to the Lost Mountain Township subdivision provide that Phases II and III shall be governed by the Lost Mountain Township Association, Inc., its successors and assigns. By 75 percent, homeowners in Phase I, and by 66 percent, homeowners in Phases II and III voted to have LMHA as their governing homeowners' association. Therefore, the vote of owners of lots in the Lost Mountain Township subdivision to make LMHA the governing body for Phases I, II, and III made LMHA the successor and assign of the Lost Mountain Township Association, Inc. as a merger. See generally *Floyd v. Springfield Plantation Property Owners' Assn.*, 245 Ga. App. 535, 537 (4) (538 SE2d 455) (2000). Whether or not there were other homeowner associations ceases to matter where the majority of the homeowners in the entire subdivision voted to have only one homeowners' association govern the subdivision rather than to have multiple competing associations. The 1996 majority vote of all lot owners in the Lost Mountain Township subdivision was sufficient to have LMHA designated as the governing entity for the entire Lost Mountain Township subdivision, even if LMHA was originally to govern only Phase I.

Further, until the Rices were denied permission to erect their fence by the ACC of LMHA, they recognized, accepted, and relied

upon LMHA as the governing body by paying it dues, attending its meetings, and participating in LMHA. Ron Cannon, the president of LMHA, testified that the Rices sought to have LMHA enforce the covenants against the Rices' neighbors. Even more compelling, the Rices accepted their pro rata distribution proceeds of the sale of property in the subdivision by LMHA. Thus, the Rices are now equitably estopped to argue that LMHA does not govern the entire Lost Mountain Township subdivision. *Pethel v. Waters*, 220 Ga. 543, 552 (4) (140 SE2d 252) (1965); *Davis v. Auerbach*, 78 Ga. App. 575, 579-580 (3) (51 SE2d 527) (1949).

(b) On April 4, 2000, LMHA commenced this action against the Rices. On February 24, 2001, LMHA was administratively dissolved by the Secretary of State for failure to file its annual registration. Such suit was voluntarily dismissed, because of such dissolution, and on June 7, 2002, was renewed. An administratively dissolved corporation may have the capacity to maintain a lawsuit. "The question of whether an administratively-dissolved corporation lacks capacity to pursue a particular course of action must be decided on a case-by-case basis." (Citation omitted.) *Crews v. Wahl*, 238 Ga. App. 892, 894 (1) (520 SE2d 727) (1999). *Gas Pump v. General Cinema Beverages &c.*, 263 Ga. 583, 584-585 (2) (436 SE2d 207) (1993), is distinguishable in law and fact, because such authority dealt with the administrative dissolution and reinstatement of a business corporation for profit under a different chapter of the Corporate Code and was beyond the two years within which it could be reinstated; here, LMHA is a nonprofit corporation organized under a different chapter of the Corporate Code, which contains no time limit upon reinstatement of an administratively dissolved corporation and where the lawsuit was pending at the time of administrative dissolution.

(c) Under Article III § 5 (a) of the Lost Mountain Township subdivision covenants, "the Architectural Control Committee shall be empowered to enjoin or remove any such construction" that violates the subdivision covenants. Thus, the ACC of LMHA, consisting of Charlie Butler, Don Mateyka, Ron Cannon, Clark Allen, and Bart Leeds, has standing to enforce such subdivision covenants.

In 1999, the Rices submitted their application to construct their proposed fence to the ACC and dealt with its members as the proper authority.

Legally insufficient covenants may be enforced under the doctrine of promissory estoppel where landowners continue to abide by and enforce their covenants in reliance on the covenants' continued viability. See *Canterbury Forest Assn. v. Collins*, 243 Ga. App. 425, 427-428 (2) (532 SE2d 736) (2000); *McLean v. Turtle Cove Property Assn.*, 222 Ga. App. 709, 710 (1) (475 SE2d 718) (1996). "This court, as indeed all civilized courts, has ruled that such recognition of a being

— even of an artificial being — will stop the mouth of any other being, natural or artificial, from denying, in a case growing out of such recognition, that the being thus recognized ever had being." *Imboden v. Etowah &c. Mining Co.*, 70 Ga. 86, 107 (1) (1883).

(d) The Rices contend that their recently created LMTHA and its architectural control committee, consisting of Larry Cox, Mark Lindsey, and Kathryn W. Rice, interveners, was the appropriate architectural control committee to approve their fence. The original developers, Sayre Ross Company and Knox Brothers, Inc., sold their last lot prior to 1996, and certainly by 1999 had lost any and all rights, authority, or power over the subdivision as a matter of law and were without authority to appoint the interveners to any architectural control committee. *Armstrong v. Roberts*, supra at 15.

Thus, both LMHA and its ACC had standing and were proper parties as found by the trial court as a matter of fact and law.

3. The Rices contend that the trial court erred in finding that the covenants and amendments run with their land.

On May 22, 1987, the covenants that the Rices complained about were recorded in the deed records. In 1991 after the covenants were recorded, the Rices purchased their lot. The recorded covenants gave the Rices constructive notice of the restrictions to which their lot was subject. *Hendley v. Overstreet*, 253 Ga. 136, 137 (318 SE2d 54) (1984). Restrictive covenants on real estate run with the title to the land and are specialized contracts that inure to the benefit of all property owners affected. *Duffy v. Landings Assn.*, 245 Ga. App. 104, 106-107 (536 SE2d 758) (2000). The parties to the contract/covenants were LMHA, its ACC, and each and every lot owner of the Lost Mountain Township subdivision, Phases I, II, and III. The courts will give effect to the substantial compliance with covenant procedures and the clear intent and purpose of the covenants. *Bowman v. Walnut Mtn. Property Owners Assn.*, 251 Ga. App. 91, 92-94 (1) (553 SE2d 389) (2001). Thus, the covenants ran with the title, making the Rices subject to the covenants, and LMHA and its ACC properly enforced the violation of such covenants. Id. at 93.

4. The Rices contend that the trial court erred in using the rules of contract construction to resolve any ambiguity in the covenants or its procedure.

The word "covenant" means a contract; covenants have taken on the meaning of conditions imposed on the land by the owner who creates the covenants for the owner's benefit, surrounding landowners, and those who are successors in title. As to the successors in title, covenants are unilateral contracts created by the grantor and accepted by the successor in title. Therefore, as we have repeatedly held, the rules of contract construction are appropriate for the

interpretation of covenants and for procedures for covenant enforcement. See *Bowman v. Walnut Mtn. Property Owners Assn.*, supra at 92-96.

The Rices argue that the ACC's failure to notify them by certified mail of each particular of their violation of the covenants was fatal to the ACC's case. However, substantial compliance with the covenants was sufficient when dealing with covenants running with the land. *Bowman v. Walnut Mtn. Property Owners Assn.*, supra at 94. Any notice requirement must be reasonably construed; here, the issue is whether or not the Rices received actual notice of ACC's complaint. *Dept. of Transp. v. Dalton Paving & Constr.*, 227 Ga. App. 207, 215 (3) (489 SE2d 329) (1997); see also *Stimson v. George Laycock, Inc.*, 247 Ga. App. 1, 5 (2) (542 SE2d 121) (2000).

The ACC gave both written and oral notice to the Rices of their violations, and there were numerous inspections, discussions, and meetings with the Rices regarding the height of the fence. In fact, during early construction, the fence was measured in Mrs. Rice's presence. Further, the fence as proposed exceeded the County Building Code height restriction.

Under the covenants, prior written approval was necessary to construct the fence; there was none from the ACC. If the Rices and the ACC had an oral agreement allowing the fence, then such agreement was that the fence would not be higher than were the fences of their neighbors, which were eight feet in height. On October 15, 2000, the Rices gave the ACC a written change of materials notice from either brick or wood to vinyl and began construction on November 23, 2000, which was less than 45 days from the material change submission in violation of the covenants.

Article III § 2 of the covenants provides that approval of plans and specifications shall not constitute a waiver of the right to disapprove similar plans and specifications for other lots. In December 2000, the fence was under construction. This action was brought in March 2001; therefore, laches does not apply, because the trial court in the exercise of its sound discretion found that LMHA was not guilty of laches. See *Redfearn v. Huntcliff Home Assn.*, 271 Ga. 745, 747 (2) (524 SE2d 464) (1999); *Antill v. Sigman*, 240 Ga. 511, 512-513 (3) (241 SE2d 254) (1978); *King v. Baker*, 214 Ga. App. 229, 232-234 (3) (447 SE2d 129) (1994).

5. The Rices contend that the trial court erred in awarding attorney fees against them.

The trial court sitting as the trier of fact awarded attorney fees under OCGA § 13-6-11, because the evidence clearly showed that the Rices had acted in bad faith from the inception of the controversy. The Rices refused to pay their dues until they wanted covenant enforcement. They paid their dues to get into the LMHA meeting to vote and

stopped payment the next day. They surreptitiously taped telephone conversations with the ACC members and at trial denied the substance of the conversations, which they had recorded on tape. They intentionally created what was a rival homeowners' association and rival architectural control committee with confusingly similar names to claim authority to build the fence. Although they were allowed to build a fence of brick or wood of eight feet, but no higher than their neighbor's fence, they built the fence eleven feet and of vinyl. They gave a notice of change of materials but commenced building prior to 45 days. They refused to honor the ACC's and LMHA's request to remedy the violations and forced the suit. All of such acts constituted acts of bad faith.

*Arbor Station Homeowners Svcs. v. Dorman,* 255 Ga. App. 866, 867-868 (3) (567 SE2d 102) (2002) does not apply, because in that case the "costs of collection" under the covenants did not specify that attorney fees were included in the costs of collection. In this case, attorney fees were awarded by the trial court under OCGA § 13-6-11 for bad faith. Likewise, *Glynn County Federal Employees Credit Union v. Peagler,* 256 Ga. 342, 344 (3) (348 SE2d 628) (1986), is inapplicable, because in that case the plaintiff did not prevail in obtaining equitable relief; in this case, the plaintiffs obtained substantial equitable relief, i.e., a permanent injunction. See *Clayton v. Deverell,* 257 Ga. 653, 655 (4), (5) (a) (362 SE2d 364) (1987). Further, the cases, *4WD Parts Center v. Mackendrick,* 260 Ga. App. 340, 344-346 (2) (579 SE2d 772) (2003); *Driggers v. Campbell,* 247 Ga. App. 300, 304 (4) (543 SE2d 787) (2000); *Smith v. Stuckey,* 233 Ga. App. 103, 107-108 (3) (503 SE2d 284) (1998), regard a bona fide controversy and apply only when the award of attorney fees is for stubborn litigiousness; these cases are not applicable when there were independent acts of bad faith.

When a party to a controversy has acted with bad faith, attorney fees can be awarded under OCGA § 13-6-11. *King v. Baker,* supra at 234-235 (4). "If . . . there is bad faith in the making or performance of the contract, attorney fees are authorized regardless of whether a bona fide controversy otherwise existed between the parties." (Citation omitted.) *McDonald v. Winn,* 194 Ga. App. 459, 460 (2) (390 SE2d 890) (1990). When a plaintiff has successfully obtained substantial equitable relief, attorney fees are appropriate. *Barnett v. Morrow,* 196 Ga. App. 201, 203 (396 SE2d 11) (1990). "An award of attorney fees under OCGA § 13-6-11 is to be affirmed if there is any evidence to support it," as in this case. *A. P. S. S., Inc. v. Clary & Assoc.,* 178 Ga. App. 131, 132 (3) (342 SE2d 375) (1986); accord *Ken-Mar Constr. Co. v. Bowen,* 245 Ga. 676 (266 SE2d 796) (1980).

6. The Rices contend that the trial court erred in finding that the Rices violated the Cobb County Zoning Ordinance.

Whether or not Cobb County approved the fence and found that it was in compliance with the zoning requirement does not deprive the trial court of the power to consider compliance with the zoning ordinance as a factor in determining the exercise of its equity power to grant or deny an injunction; this case was not an appellate review of the administrative actions of the Cobb County Board of Zoning Administration but was an action in equity where the conduct of each of the parties is highly relevant in determining where the equities lie. OCGA § 23-1-11 ("Where equities are equal, the law shall prevail. If equities are unequal, the superior equity shall prevail. Superior diligence as to time will create such inequality."); see generally *Cantrell v. Henry County,* 250 Ga. 822, 826 (2) (301 SE2d 870) (1983); OCGA §§ 23-1-12 ("The equity of a party who has been misled is superior to that of the person who willfully misleads such party."); 23-1-8 ("Equity considers that done which ought to be done and directs its relief accordingly."); see generally *Prince v. Black,* 256 Ga. 79, 80 (344 SE2d 411) (1986). Evidence that the Rices violated the Cobb County Zoning Ordinance is just another factor that the trial court properly relied upon in entering its judgment in equity after the exercise of sound discretion based on the evidence.

After passing the Cobb County Zoning Ordinance, the legal interpretation of such ordinance is for the court. OCGA § 1-3-1. "Courts have a duty to construe a statute to sustain it if its language is susceptible to more than one construction," as argued by the Rices. (Citation omitted.) *City of Atlanta v. McKinney,* 265 Ga. 161, 163 (1) (454 SE2d 517) (1995). "In construing an ordinance or resolution of a governmental unit, if the language is susceptible of more than one construction, that construction is preferred which will render it valid rather than invalid." (Citation and punctuation omitted.) *Mayor &c. of Hapeville v. Anderson,* 246 Ga. 786, 787 (272 SE2d 713) (1980). The Rices and LMHA each argue that the Cobb County Zoning Ordinance height provision should be construed in different ways, creating an ambiguity. Had the height ordinance contained a definition telling how the measurement was to be made, such would control the definition of eight-feet height limit; absent a definitional limitation, the measurement would be from the ground to the highest point of the fence. The trial court did not deal with such issue as an appeal from the county administrative body.

7. The Rices contend that the trial court relied upon facts not in evidence.

Where the trial court is the finder of fact, it determines weight, credibility, opinion evidence, sufficiency, and admissibility of all evidence; if there is any evidence to support the judgment, it must be affirmed. "In a bench trial the court sits as the trier of fact and her findings shall not be set aside unless clearly erroneous. The 'clearly

erroneous' test is the same as the 'any evidence rule.' Thus, an appellate court will not disturb fact findings of a trial court if there is any evidence to sustain them." (Citations and punctuation omitted.) *Kimbrell v. Effingham Bd. of Tax Assessors*, 191 Ga. App. 544, 545-546 (382 SE2d 388) (1989).

Ron Cannon measured the fence as 11 feet and based his opinion upon pictures, his measurements, and his own personal observations. Mrs. Odom is five feet seven inches tall and was pictured standing in front of the Rices' fence. Whether or not the testimony of Mrs. Saye or Mrs. Odom as to the height of the fence or whether they measured the fence does not undermine the judgment, because such issue was not preserved by proper objection at trial. Further, the trial court had some other evidence as to the height.

8. The Rices contend that the trial court erred as a matter of law in not directing a verdict for them.

This was a nonjury trial so that motions for directed verdicts under OCGA § 9-11-50 are procedurally inappropriate. The appropriate procedure at the close of plaintiff's evidence would be to move for involuntary "dismissal on the grounds that upon the facts and the law the plaintiff has shown no right to relief," and a motion for directed verdict in a nonjury case shall be treated as if it were a motion for an involuntary dismissal. OCGA § 9-11-41 (b); *Grebel v. Prince*, 232 Ga. App. 361, 365 (2) (501 SE2d 538) (1998); *Century 21 Mary Carr &c. v. Jones*, 204 Ga. App. 96, 97 (418 SE2d 435) (1992). It is error to grant such motion if there is any evidence to support the judgment, and we have found that there was some evidence to support the trial court's judgment. *Emory Rent-All v. Lisle Assoc. Gen. Contractors*, 212 Ga. App. 516 (1) (441 SE2d 926) (1994); *Safeway Ins. Co. v. Holmes*, 194 Ga. App. 160 (390 SE2d 52) (1989); *Comtrol, Inc. v. H-K Corp.*, 134 Ga. App. 349 (214 SE2d 588) (1975).

*Judgment affirmed. Ruffin, P. J., and Adams, J., concur.*

DECIDED AUGUST 16, 2004 —
RECONSIDERATION DENIED AUGUST 31, 2004 —

J. Andrew Rice, *pro se.*
Kathryn W. Rice, *pro se.*
*Brock, Clay, Calhoun, Wilson & Rogers, Richard W. Calhoun,* for appellees.