## A09A2199. WYNDHAM LAKES HOMEOWNERS ASSOCIATION, INC. v. GRAY et al.

(692 SE2d 704)

DOYLE, Judge.

Wyndham Lakes Homeowners Association, Inc. ("Association") appeals from the denial of its motion for summary judgment against and from the grant of summary judgment to Betty Beecroft Gray and John R. Gray, whom the Association sued seeking payment of past due Association dues. Because the trial court's judgment was based on erroneous legal conclusions, we reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the undisputed record shows that in May 1987, developer Picketts Properties, Inc. executed a security deed in favor of First National Bank of Paulding County ("Bank") to secure a loan on the tract of land that would become the Wyndham Lakes development. In September 1987, Picketts Properties recorded a Declaration of Covenants, Conditions and Restrictions for Wyndham Lakes ("Declaration"), which included two adjoining lots now owned by the Grays. The Declaration contained the following language:

> The Declarant hereby declares that all the property described in Exhibit "A" . . . shall be held, sold and conveyed subject to the following easements, restrictions, covenants and conditions which shall run with the real property submitted to this Declaration and which shall be binding on all parties having any right, title or interest in the described properties or any part thereof, their successors and assigns and shall inure to the benefit of each owner and each such owner's successors and assign[s] thereof.

Exhibit A contained a description delineating boundaries that include the Grays' property, and the Declaration contained the duty to pay the assessments the Association seeks to recover in this suit.

In October 1987, Picketts Properties recorded a plat for the

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Wyndham Lakes development, which included the Grays' property and contained the word "out" on several lots, including the Grays', designating them according to the key on the plat as "unsuitable for septic system." The Grays deposed that they understood the word "out" to mean that the lots were not buildable in their current condition. In May 1990, Picketts Properties recorded a transfer of a portion of the original Wyndham Lakes tract back to the Bank, via a warranty deed, apparently to avoid foreclosure. In January 1991, Picketts Properties purported to transfer to the Bank its rights as declarant under the Declaration. The transfer was recorded in December 1991. Also in December 1991, the Bank purported to amend the covenants to remove the covenants and restrictions from a portion of the tract not including the Grays' property. In 1993, the Bank then transferred the Wyndham Lakes property including the Grays' property, via limited warranty deed to Thomas M. and Thomas H. Steed, who transferred it via warranty deed to their company, Springville Corporation, which transferred two adjoining lots to the Grays via warranty deed. Each of these transactions was duly recorded, but none of the latter three deeds referred to the Declaration.[2]

Due to size and terrain, the two individual lots bought by the Grays were not originally suitable for development, so as part of the purchase from Springville Corporation, the Grays agreed to buy a home built by Springville if the company did the excavation and filling necessary to make the combined lots suitable for construction of a home. The Grays asked the builder (Thomas H. Steed) and their realtor if the lots were subject to the restrictions of the Wyndham Lakes development and were told that the lots were not. The Grays relied on these assurances in making their decision to purchase the lots.

Approximately six months after the Grays moved into their home, and on four occasions thereafter, various officers, directors, and agents of the Wyndham Lakes Homeowners Association approached the Grays to inform them that they owed Association dues. Each time, the Grays denied that they were a part of the subdivision and declined to pay. There is evidence in the record that at least one payment was made to the president of the Association, although the Grays contend this was voluntary and not related to the Association assessment, and there is evidence that the Association filed homeowners association liens against the Grays' property in 1999, 2002, and 2004. In March 2004, after sending the Grays a demand letter,

---

[2] The Declaration was amended in 1989, but the amendment did not remove the restriction the Association seeks to enforce.

the Association filed suit to collect the past due assessments, interest, and attorney fees.

After the Grays answered and denied liability, each party moved for summary judgment on the issue of the applicability of the Declaration to the Grays' lots, which the trial court granted in favor of the Grays.[3] The Association filed this appeal.

1. The trial court first ruled that the restrictive covenants are unenforceable against the Grays due to defects in the chain of title. This issue primarily relates to the re-transfer of the property back to the Bank before it was then transferred to the Grays' eventual predecessor.[4] The Grays argued, and the trial court apparently agreed, that the transfer of a portion of the original parcel from Picketts Properties back to the Bank extinguished the covenants because the Bank's security deed was recorded before the Declaration was. As support, the Grays rely on *Springmont Homeowners Assn. v. Barber*,[5] which addressed a bank's foreclosure, pursuant to a security deed, on several lots that were subject to a declaration of covenants and restrictions recorded after the bank had recorded the security deed. This Court held that the bank's ownership interest after foreclosure was not subject to the restrictions because the bank's security deed (under which it took ownership by foreclosure) had priority over the subsequently recorded restrictions.[6] Under those circumstances, "[a]lthough the Declaration bound those taking under the developer [borrower], it never became part of the chain of title between the developer and the Bank."[7] Therefore, in *Springmont*, the bank's successor was not subject to the restrictions in the declaration.

Here, however, the Grays' reliance on *Springmont* is misplaced. It is undisputed that the Bank's ownership interest in this case arose by virtue of the transfer by *warranty deed* from Picketts Properties to the Bank, not by virtue of foreclosure under a prior existing security deed. It is well settled in Georgia that when "a restrictive covenant is recorded, the purchaser is charged with legal notice of the covenant, even if it is not stated in his own deed."[8] The Grays correctly concede in their appellate brief that "the recorded cov-

---

[3] Other procedural rulings apparently occurred, but they have been omitted from the appellate record.

[4] The trial court did not specify what particular defect supported its ruling.

[5] 221 Ga. App. 713 (472 SE2d 695) (1996).

[6] See id. at 713-714.

[7] Id. at 714.

[8] *Timberstone Homeowner's Assn. v. Summerlin*, 266 Ga. 322, 323 (467 SE2d 330) (1996). See also *Smith v. Gulf Refining Co.*, 162 Ga. 191, 194 (134 SE 446) (1926) (covenant was binding upon grantee "although [it] received a conveyance . . . free from any such written stipulation or condition").

enants for Wyndham Lakes provided constructive notice";[9] therefore, despite the Grays' assertion that they lacked actual notice, they are charged with legal notice of the Declaration. Having taken title with legal notice of the Declaration, the Grays are subject to the restrictions contained therein, because, if "the covenant is recorded, as in this case, the purchaser . . . takes no greater interest than his predecessor had."[10]

2. The trial court also ruled that, on the grounds of waiver and laches, the Declaration's restrictions are unenforceable against the Grays because the Association failed to attempt to enforce them until it filed this suit 11 years after the Grays purchased the property. However, this conclusion is belied by the record, which contains evidence (i) that the Association approached the Grays to enforce the Declaration as soon as six months after they purchased the property, (ii) that payments of some type were voluntarily made, and (iii) that the Association filed assessment liens on the Grays' property in 1999, 2002, 2004. This evidence undermines the trial court's stated rationale, i.e., that

> [w]aiver is essentially a matter of intent based upon full knowledge of all the material facts, and the evidence relied upon to prove a waiver must be so clearly indicative of an intent to relinquish a then known particular right or benefit as to exclude any other reasonable explanation.[11]

Therefore, in light of the evidence in the record and the nature of the relief sought — mere payment of assessments as opposed to control of the siting, construction, or architecture of the Grays' house — a summary ruling that the Association could not enforce any requirement to pay assessments, in the past or ever, was not appropriate on a waiver or laches theory.[12]

3. Finally, the trial court ruled that as a matter of general equity,

---

[9] The Grays' argument that the plat's "out" designation of their lots for septic purposes renders them outside the scope of the Declaration is meritless. The plat itself states that the "out" notation merely "means unsuitable for septic system." It is undisputed that the Grays' lots fall within the boundaries of the property described in the Declaration's exhibit. By the terms of the Declaration, this exhibit, not the county's septic approval, governs the scope of the Declaration. Moreover, the record shows that the plat was amended to remove the "out" designation from the Grays' lots, reflecting the completion of grading and inspection necessary for septic approval. The amendment was recorded four months before the Grays purchased the property.

[10] *King v. Baker*, 214 Ga. App. 229, 232 (3) (447 SE2d 129) (1994).

[11] (Punctuation omitted.) *State Mut. Ins. Co. v. Harmon*, 72 Ga. App. 117, 120-121 (3) (33 SE2d 105) (1945).

[12] See, e.g., *Bacon v. Edwards*, 234 Ga. 100, 103 (214 SE2d 539) (1975) ("laches is ordinarily a question of fact properly submitted to a jury"); *Redfearn v. Huntcliff Homes Assn.*, 243 Ga. App. 222, 226 (2) (531 SE2d 376) (2000) (slight conflicting evidence required jury

the Association could not enforce the Declaration's requirement to pay assessments against the Grays.[13] But, in light of the Grays' legal notice of the Declaration, evidence of the Association's multiple attempts to enforce the Declaration by filing liens on the Grays' property, and the rights of the other members of the Association to share the cost of maintaining common facilities and property, the trial court abused its discretion in so ruling. "Restrictive covenants on real estate run with the title to the land and are specialized contracts that inure to the benefit of all property owners affected."[14] The Grays do not have superior equity merely because they relied on the incorrect representations of their builder and realtor. There is no allegation that the Association did anything to dissuade the Grays from properly inquiring into the nature of the estate they took.

> Covenants are so enforced on the principle of preventing a party having knowledge of the just rights of another from defeating such rights. . . . [I]t is clear that a restrictive covenant (here obligating [the Grays] to pay assessments . . .) is an enforceable covenant against a purchaser with notice. The purpose of mandatory assessments is to maintain the common property in the subdivision for the use and enjoyment of all owners. The effect of invalidating mandatory payments of assessments for maintenance of amenities in a community without affirmative acceptance would render the provision of services or facilities in a community an impossibility because it would permit property owners to determine for themselves what portion of the amenities they would be willing to accept or to reject.[15]

We note that the Association does not seek to enforce any physical restrictions on the Grays' house or property (to the extent there are any such violations — none have been alleged), which

---

resolution). We note that OCGA § 9-3-29 (b) provides that "[i]n actions for breach of covenant which accrue as a result of the failure to pay assessments or fees, the action shall be brought within four years after the right of action accrues." The trial court's ruling was limited to the applicability vel non of the Declarations. Therefore, because neither party addressed the effect of OCGA § 9-3-29 (b) on the Association's claim, and because the trial court did not rule on that issue, we do not address it here.

[13] This Court has jurisdiction over equitable issues when, as here, they are ancillary to the primary issue, which is legal. See *Redfearn v. Huntcliff Homes Assn.*, 271 Ga. 745, 748 (2) (524 SE2d 464) (1999) ("'[B]ecause the primary issue to be resolved is legal and the viability of any equitable claim is ancillary thereto, this appeal is outside the realm of the Supreme Court's jurisdiction over 'equity cases.' ").

[14] *Rice v. Lost Mountain Homeowners Assn.*, 269 Ga. App. 351, 354 (3) (604 SE2d 215) (2004).

[15] (Citations and punctuation omitted.) *Timberstone Homeowner's Assn.*, 266 Ga. at 323.

would be an inequitable burden in light of the fact that the Grays' house is already built.[16] Enforcing such restrictions would raise considerable equitable questions that are not presented by the Association's complaint here. Nevertheless, equitable considerations in the present case are minimized by the legal notice to the Grays and the nature of the relief the Association seeks (recovery of $2,782.22 in assessments plus interest and attorney fees). Accordingly, in light of the trial court's underlying errors, particularly that the Grays lacked legal notice, it erred in ruling as a matter of equity that the Declaration was unenforceable against the Grays.

*Judgment reversed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 23, 2010.

*Weissman, Nowack, Curry & Wilco, Jason A. LoMonaco*, for appellant.

*Robertson, Bodoh & Nasrallah, Morgan M. Robertson*, for appellees.

---

[16] Cf. *Bales v. Duncan*, 231 Ga. 813, 814 (2) (204 SE2d 104) (1974) (injunctive relief denied when plaintiff had knowledge of defendant's construction plans and waited to enforce restriction until after the defendant had spent considerable sums constructing building).