## A97A0562. GREBEL v. PRINCE.
### (501 SE2d 538)

McMurray, Presiding Judge.

K. W. Prince sold Daniel Mark Grebel over 430 acres in Lee County, Georgia, and financed most of the deal with a $125,607.50 purchase money note. This loan was payable in annual installments over a ten-year period and was secured by conveyance of Grebel's realty to Prince in a deed to secure debt. Grebel failed to pay the second yearly installment when it came due and Prince accelerated the debt, notifying Grebel that "in the event you fail to pay the total of said indebtedness, less unearned interest, within ten (10) days after receipt of this letter, you will be liable for the total amount due, less unearned interest required by law to be rebated, plus an additional fifteen [percent] attorney's fees. . . ." Although Grebel was unable to satisfy the loan within ten days after receipt of this notice, he refinanced the debt before a pending foreclosure sale and offered to pay the remaining principal balance, accrued interest, penalties and attorney fees. Prince rejected this offer because he believed Grebel also owed him over $50,000 in unearned interest. Seeking judicial resolution of this dispute, Grebel filed a declaratory judgment action in the Lee County Superior Court the day before the advertised foreclosure sale. He also filed a check for the amount he alleged was due under his promissory note and sought to restrain the foreclosure sale by way of an interlocutory injunction. The trial court granted an interlocutory injunction and ordered Prince to show cause "why this Injunction should not be continued and Declaratory Judgment entered." Although Prince's attorney notified Prince before the foreclosure sale "that a document had been faxed [to his office indicating] that something had happened to try to stop the foreclosure[,]" Prince proceeded with the foreclosure sale and purchased the property for $134,500. This amount, according to Prince, reflected the loan's remaining principal balance, accrued interest, penalties and attorney fees.

Grebel filed an amended complaint, seeking to set aside the foreclosure sale. He also filed (in the same action) a complaint for contempt, contending Prince unreasonably refused to settle the debt and wilfully violated the trial court's interlocutory injunction. Prince responded by filing a motion to dismiss based on lack of personal jurisdiction. Acknowledging that Prince is a resident of Dougherty

County, Georgia, Grebel filed a motion to transfer and change venue. The trial court granted this motion, but first denied Grebel's contempt action based on a finding that "service was not perfected on [Prince] of either the Complaint or the Temporary Restraining Order prior to the foreclosure sale on the Lee County Courthouse steps on Tuesday, March 5, 1996." The trial court also found that "[Prince's] attorney had received via FAX a copy of both the Complaint and the Temporary Restraining Order at 4:26 p.m. on Monday, March 4, [1996,] but refused to acknowledge service on behalf of [Prince, and that the] property was sold at the foreclosure sale the following morning on the Lee County courthouse steps despite the Temporary Restraining Order."[1]

At a hearing in the Superior Court of Dougherty County on Grebel's action to set aside the foreclosure sale, Prince asserted that Grebel is not entitled to relief because he did not tender an amount necessary to satisfy the loan. In opposition, the attorney who negotiated the foreclosure dispute for Grebel (no longer representing Grebel) testified that he informed the attorney who represented Prince during the foreclosure proceedings that Grebel stood ready, willing and able to satisfy the loan's remaining principal balance, earned interest, penalties and attorney fees.[2] Grebel's former attorney explained that Prince's foreclosure attorney rejected this offer because he believed Grebel's accelerated debt to Prince included over $50,000 in unearned interest which Prince would have collected during the life of the ten-year loan. Grebel's former attorney testified that he calculated the loan's pay-off to be "somewhere a little above $130,000 — 131 — $132,000," but that Prince's foreclosure attorney "steadfastly refused" to accept anything less than a "cashier's check" for "$185,647.22." To this refusal, Grebel's former attorney testified as follows: "[GREBEL'S TRIAL ATTORNEY:] Okay. At anytime, did [the attorney] on behalf of Mr. Prince ever tell you that he would accept that payoff? [GREBEL'S FORMER ATTORNEY:] He categorically told me he would not take it. He told me the figure it would take to pay it off and that figure would be the entire amount, including all interest that would accrue over the next seven, eight or nine years the note ran — however long it was. It was over $180,000.00 was the figure that he quoted me that it would take to pay the note off."

<hr>

[1] The trial court entered a "CORRECTIVE ORDER" (approved and prepared by Prince's attorney) several months later excluding the above quoted findings of fact. This "CORRECTIVE ORDER" is ineffectual, however, because Grebel filed a timely notice of appeal after the trial court's original contempt and transfer order. See *Argonaut Ins. Co. v. Atlantic Wood Indus.*, 187 Ga. App. 477, 478-479 (370 SE2d 770).

[2] Prince's foreclosure attorney did not appear at this hearing, but Prince testified that this attorney never informed him before the foreclosure sale that Grebel had offered any amount toward satisfaction of the debt.

Grebel's former attorney further detailed his offer to satisfy the loan before the foreclosure sale during the following cross-examination: "[PRINCE'S TRIAL ATTORNEY:] Did y'all obviously believe that $130,992.47 was sufficient [to satisfy the debt]? [GREBEL'S FORMER ATTORNEY:] Yes. Q. Okay. Did anybody at anytime deliver a check or walk to, come in, deliver personally to K. W. Prince and say here's a check for what we contend is owed, $130,992.47? A. No. Q. Did anyone at anytime to your knowledge communicate to Mr. Prince or any of his agents, being his attorney, that we stand ready, willing and able to pay $130,992.47? A. Not specifically that amount — we stated repeatedly we stand ready, willing and able to pay principal, interest, fifteen percent attorney's fees, costs because at that time, we did not know what those were. Q. All right. And all of that you've talked about, you never mentioned the late fees — did you contend that the late fees were not owing at that time? A. No. I believe that we did include those as being part of what was owed. In fact, when I finally realized what the amount would be was when [Prince's foreclosure attorney] sent the letter contending [Grebel] owed $185,000.00 but outlined actually what all the costs and fees would be. That showed me what all the fees would be except for interest on the principal because there would be a difference between his principal balance and the one we were using, but it gave me a reference on how to compute it. I think that's — Q. Now, [Prince's foreclosure attorney] sent you some case law that he contended supported his position that he was entitled to the unearned interest? A. Yes. Q. You just disagreed and found case law to the contrary? A. I found the case law that [Prince's foreclosure attorney] was talking about totally irrelevant to the case at hand, quite honestly, but certainly respect his right to have that opinion. You know, I know there can be differences. Q. Y'all didn't really rely on that then as — I mean you basically concluded differently, that it was a lesser amount? A. Yes, I concluded differently based on my belief that you could not under Georgia law add unearned interest if you were at the brink of foreclosure. Q. Now, I'll repeat this question. I think I've asked you. At any point, did you or anybody else then actually, as I would define or you have just defined a tender, tendered an amount that you computed to be owing? A. I believe that we had tendered on the initial conversation to [Prince's foreclosure attorney] and on several follow-up conversations a legal tender by saying we were ready, willing and able to pay. Once you will tell me what that figure is, we have the money and we will certainly pay it and giving the best guess estimate of about what that figure would be. Did I actually go with a check with the exact amount that was owed to [Prince's foreclosure attorney]? No, I did not. I do know that one was filed with the [declaratory judgment] lawsuit on Monday[, the day before the fore-

closure sale]. I did not personally deliver that. I really didn't personally — it was not personally delivered on [Prince's foreclosure attorney] or on Mr. Prince. Q. And do you happen to have knowledge of where that check is now that was delivered to the [Lee County Superior Court] Clerk's office? A. I have no personal knowledge. I know it was supposedly delivered to Lee County Courthouse and if it is not in this file, I would assume or guess that it was still at Lee County."

Prince's foreclosure attorney posted a letter, dated February 29, 1996, to Grebel's former attorney memorializing his view that Grebel owes Prince "$185,647.22." Five days later, Prince successfully bid $134,500 for Grebel's farm at the foreclosure sale. Prince testified that his bid satisfied Grebel's debt, including the loan's remaining principal balance, accrued interest, penalties and attorney fees.

The Dougherty County Superior Court granted Prince's motion for directed verdict, finding that "no tender of an amount sufficient to satisfy [Grebel's] obligation was properly or timely made by [Grebel] to [Prince] or his agents. . . ." Grebel appealed this judgment as well as the Lee County Superior Court's judgment denying his contempt action against Prince.[3] We transferred this appeal to the Supreme Court of Georgia because, in our view, Grebel's second enumeration of error raises an equitable precept challenging the trial court's decision not to set aside the Grebel farm's foreclosure sale. Ga. Const. 1983, Art. VI, Sec. VI, Par. III (2). See *R.R.R. Limited Partnership v. Recreational Svcs.*, 264 Ga. 494 (1) (448 SE2d 211). The Supreme Court of Georgia returned the case to the Court of Appeals with the following explanation:

"The issue before the trial court was whether foreclosure was proper and if not, whether the foreclosure should be set aside or whether damages should be awarded. The trial court held that the foreclosure was proper because Grebel failed to make an adequate tender. The only enumeration on appeal is whether there was sufficient evidence to support the trial court's finding that there was a failure to tender the amount due under the note. Because the legality or propriety of equitable relief is not a substantive issue on appeal, this case was not properly transferred from the Court of Appeals. *Beauchamp v. Knight*, 261 Ga. 608 (1991). Case returned to the Court of Appeals." *Held*:

1. Grebel first challenges the Lee County Superior Court's order dismissing his action for contempt against Prince based on that court's finding that "service was not perfected on [Prince] of either

---

[3] Grebel filed a direct appeal in the Lee County Superior Court from that court's order denying his application for contempt. Because this appeal was from an interlocutory order and Grebel did not file an application for appeal pursuant to OCGA § 5-6-34 (b), we were compelled to dismiss the direct appeal in Court of Appeals Case No. A97A0563.

the Complaint or the Temporary Restraining Order prior to the foreclosure sale on the Lee County Courthouse steps on Tuesday, March 5, 1996." We agree.

"A party is bound by a restraining order of which he has notice despite the fact that personal service of the order upon him may have been defective in some respect. Code Ann. § 81A-165 (d) [now OCGA § 9-11-65 (d)]; *Murphey v. Harker*, 115 Ga. 77 (5) (41 SE 585) (1902); *Anderson v. Hall*, 128 Ga. 525 (1) (58 SE 43) (1907); *Patten v. Miller*, 190 Ga. 152 (3) (8 SE2d 786) (1940)." *Cameron v. Richards*, 246 Ga. 231 (271 SE2d 146). It is undisputed, in the case sub judice, that Prince's foreclosure attorney knew about that Lee County Superior Court's interlocutory injunction the day before the nonjudicial foreclosure sale, but proceeded with the "foreclosure sale the following morning on the Lee County courthouse steps despite the Temporary Restraining Order." Under such circumstances, and in light of Prince's admission that his attorney notified him before the foreclosure sale "that something had happened to try to stop the foreclosure," the trial court erred in not considering the substance of Grebel's action for contempt against Prince and failing to follow the well settled policy that notice to an attorney is notice to the client employing him. *Oseni v. Hambrick*, 207 Ga. App. 166, 167 (427 SE2d 559). Accordingly, we reverse the Lee County Superior Court's order denying Grebel's action for contempt and remand the case sub judice for the Dougherty County Superior Court to consider whether Prince wilfully violated the Lee County Superior Court's interlocutory injunction.

2. Grebel contends in his second enumeration of error that the trial court erred in granting Prince's motion for directed verdict based on a finding that "no tender of an amount sufficient to satisfy [Grebel's] obligation was properly or timely made by [Grebel] to [Prince] or his agents. . . ."

"While the parties below and the [trial] court treated the motion as one for a directed verdict, since there was no jury and the [trial] court sat as factfinder, the ruling will be treated as an involuntary dismissal under OCGA § 9-11-41 (b), which operates as an adjudication upon the merits. *Century 21 Mary Carr &c. v. Jones*, 204 Ga. App. 96, 97 (418 SE2d 435) (1992). Therefore, the [trial] court's findings are analogous to those of a jury and the evidence is so viewed by this court." *Emory Rent-All v. Lisle Assoc. Gen. Contractors*, 212 Ga. App. 516 (1) (441 SE2d 926). But even viewing the evidence in the case sub judice from this liberal perspective, we find that the Dougherty County Superior Court erred in granting Prince's motion for directed verdict based on its finding that Grebel failed to tender an amount sufficient to satisfy his debt.

Although it is a general rule that a tender must be certain and

unconditional, "[u]nder the rule that equity will not require a useless formality, . . . a tender is unnecessary where the person to whom the money is due states that the tender would be refused if made. . . . *Ansley v. Hightower*, 120 Ga. 719 (4) (48 SE 197); *Miller v. Watson*, 139 Ga. 29, 32 (76 SE 585); *Tolbert v. Short*, 150 Ga. 413, 414 (5) (104 SE 245); *Fraser v. Jarrett*, 153 Ga. 441, 451 (112 SE 487)." *Bank of LaFayette v. Giles*, 208 Ga. 674, 679 (3) (69 SE2d 78). In the case sub judice, Grebel's former attorney's testimony regarding his efforts to tender Grebel's debt before the foreclosure sale is unchallenged. This attorney testified that he informed Prince's foreclosure attorney on several occasions before the foreclosure sale that Grebel stood ready, willing and able to satisfy the loan's remaining principal balance, earned interest, penalties and attorney fees, but that Prince's foreclosure attorney "steadfastly refused" to accept anything less than a "cashier's check" for "$185,647.22." Since Prince did not call his foreclosure attorney to testify at trial, the presumption is that Prince's foreclosure attorney would completely corroborate Grebel's former attorney's testimony regarding his efforts to tender the undisputed amount of Grebel's debt. OCGA § 24-4-22. Under such circumstances, and in view of the fact that Grebel filed a check in the Lee County Superior Court for the amount he alleged was due before petitioning that court for an interlocutory injunction, we find no basis in equity for obstructing Grebel's claim to set aside the alleged wrongful foreclosure sale of his farm. Even if Grebel's former attorney's offer to pay Grebel's debt before the foreclosure sale was insufficient, this proffer does not block Grebel's path to equity. Where there is a bona fide controversy over the amount required to satisfy the debtor's obligation, the debtor "[should be required] to tender only such sums as are admittedly due under the note, not all sums which may be claimed by the creditor as is due." (Endnote omitted.) Frank S. Alexander, Ga. Real Estate Finance & Foreclosure Law (2nd ed.), § 8-10 (c), at p. 177. Accordingly, the trial court erred in granting Prince's motion for directed verdict based on a finding that "no tender of an amount sufficient to satisfy [Grebel's] obligation was properly or timely made by [Grebel] to [Prince] or his agents. . . ." The case sub judice is remanded for the trial court to consider Grebel's claim to set aside the alleged wrongful foreclosure sale of his farm. See *Isaacson v. House*, 216 Ga. 698, 702 (1), 703-704 (119 SE2d 113).

*Judgment reversed and case remanded. Blackburn and Eldridge, JJ., concur.*

DECIDED APRIL 6, 1998 —
RECONSIDERATION DENIED APRIL 29, 1998 — 

*David J. Grindle*, for appellant.
*L. Clayton Smith, Jr.*, for appellee.
*Moore, Clarke, DuVall & Rodgers, James H. Moore III*, amicus curiae.