A06A0630. MITCHELL et al. v. INTERBAY FUNDING, LLC.
(630 SE2d 909)

RUFFIN, Chief Judge.

Following a nonjudicial foreclosure sale, Interbay Funding, LLC ("Interbay") filed a dispossessory action against Samuel and Susan Mitchell ("the Mitchells"). The Mitchells counterclaimed for wrongful foreclosure. Interbay subsequently moved for summary judgment on the counterclaim. The trial court granted the motion, and the Mitchells appeal. We affirm.

" 'To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in [a] light most favorable to the nonmoving party, warrant judgment as a matter of law.' "[1] Viewed in this manner, the record shows that the Mitchells obtained a $45,450 loan to purchase a home in 1997. To secure the loan, they executed a promissory note and security deed, conveying to the lender a first priority security interest in the property. The loan documentation required the Mitchells to make monthly payments of $454.43.

The original lender then sold the Mitchells' indebtedness to Interbay. In 2000, Interbay notified the Mitchells that they needed to obtain flood insurance for the property. Interbay further advised that it had secured minimum coverage to protect the property until the Mitchells obtained independent coverage. According to the notice, the Mitchells' monthly payment would be increased to pay for the insurance if sufficient escrow funds were not available. The addition of flood insurance ultimately increased the Mitchells' monthly payment to $671.31.

---

[1] *Hill v. Filsoof*, 274 Ga. App. 474, 475 (1) (618 SE2d 12) (2005).

The Mitchells protested Interbay's flood insurance requirement, noting that the loan documents prepared by the original lender stated that such insurance was not necessary. The Mitchells' insurance agent also informed Interbay that the property was not in a flood zone. The monthly statements from Interbay, however, continued to include a charge for flood insurance.

Although the Mitchells made their monthly $454.43 payments, they did not submit additional money for flood insurance. On June 7, 2001, Interbay returned the Mitchells' May payment, which did not include funds for flood insurance, and requested that the Mitchells call the company regarding their "delinquency." According to Susan Mitchell, she contacted Interbay and was told that she and her husband needed to pay the entire balance of the loan or risk foreclosure.

Several months later, the Mitchells filed for bankruptcy. The bankruptcy plan required the Mitchells to "make regular post-petition payments" directly to Interbay "as they [became] due." The bankruptcy court confirmed the Mitchells' plan in February 2002. Following the bankruptcy hearing, the Mitchells' attorney advised Susan Mitchell to make the regular monthly payments to Interbay. The Mitchells heeded this advice, submitting to Interbay monthly $454.43 payments between September 2001 and April 2002, and in June 2002.[2] Without dispute, Interbay accepted these payments.

The Mitchells, however, submitted no further payments after June 2002. Susan Mitchell testified that they stopped making payments because Interbay again demanded additional money for flood insurance and "threatened foreclosure." In October 2002, Interbay sought relief from the automatic bankruptcy stay, asserting that the Mitchells had failed to make the required, post-petition mortgage payments. The bankruptcy court granted Interbay's motion, and Interbay foreclosed on the property.

Interbay subsequently filed a dispossessory proceeding, and the Mitchells counterclaimed for wrongful foreclosure. According to the Mitchells, Interbay acted in bad faith by overcharging them and improperly demanding flood insurance, thus wrongfully depriving them of their home and property. The trial court granted Interbay summary judgment on the counterclaim.[3]

We find no error. The promissory note and deed to secure debt signed by the Mitchells entitled the holder — in this case, Interbay — to accelerate the debt and demand full payment upon default, which would result from, among other things, failure to make monthly

---

[2] The Mitchells apparently did not make a payment in May 2002.

[3] The trial court also granted Interbay a writ of possession.

payments. The security deed further authorized Interbay to foreclose on the property if the Mitchells failed to cure the default.

The Mitchells concede that they owed monthly payments to Interbay in the amount of $454.43. When they stopped making these payments in June 2002, they fell within the default provisions of the note and security instrument. We recognize that the Mitchells dispute Interbay's flood insurance charge and claim that such charge is fraudulent. But even if a bona fide controversy existed as to liability for this additional amount, the Mitchells were obligated to pay the monthly sum they admittedly owed under the promissory note.[4]

On appeal, the Mitchells claim that since Interbay returned their $454.43 payment in June 2001 and threatened foreclosure, any further tender of this monthly sum would have been useless and was, therefore, not legally required. It is true that " 'a tender is unnecessary where the person to whom the money is due states that the tender would be refused if made.' "[5] As noted above, however, the Mitchells made — and Interbay accepted — monthly payments of $454.43 between September 2001 and June 2002. Interbay may not have treated such payments as fully satisfying the Mitchells' obligation. But the record belies the Mitchells' claim that Interbay rejected their monthly payment "on every occasion after May, 2001."

The Mitchells have cited no evidence that Interbay would have rejected payments made after June 2002. And, despite owing at least $454.43 per month to Interbay, the Mitchells failed to make *any* payment between July 2002 and the date of foreclosure. Under these circumstances, the trial court properly granted Interbay summary judgment on the Mitchells' wrongful foreclosure claim.[6]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED MAY 11, 2006 — 

*Phillips & Kitchings, Richard Phillips*, for appellants.

---

[4] See *Harpe v. Stone*, 212 Ga. 341 (1) (92 SE2d 522) (1956) (before borrower may have foreclosure sale set aside, borrower "must pay or tender to the creditor the principal and interest which he admits to be due [cits.], and would not be relieved of this duty by reason of the fact that the creditor was demanding of him more than he owed"); *Grebel v. Prince*, 232 Ga. App. 361, 366 (2) (501 SE2d 538) (1998) ("Where there is a bona fide controversy over the amount required to satisfy the debtor's obligation, the debtor should be required to tender only such sums as are admittedly due under the note, not all sums which may be claimed by the creditor as is due.") (punctuation omitted); see also *Hill*, supra at 476 ("Neither fraud nor poverty constitute an equitable excuse for failure to tender.").

[5] *Grebel*, supra.

[6] See *Marsh v. Berens*, 237 Ga. 135, 136 (227 SE2d 36) (1976) (summary judgment for defendants on plaintiff's wrongful foreclosure claim appropriate where evidence showed that plaintiff failed to make timely payments required by security deed).

*Morris, Schneider & Prior, Kyle S. Kotake, Callaway, Braun, Riddle & Hughes, Stanley E. Harris, Jr.*, for appellee.