**FIRST DIVISION
MILLER, P. J.,
MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 4, 2019**

# In the Court of Appeals of Georgia

A18A1963.   OCONEE   FEDERAL   SAVINGS   AND   LOAN
ASSOCIATION v. BROWN et al.

MILLER, Presiding Judge.

Oconee Federal Savings and Loan Association ("Oconee Federal") appeals from the trial court's order granting an injunction enjoining the scheduled foreclosure sale of the house of Kenneth and April Brown. Because the Browns have not tendered to Oconee Federal payment of their debt that has become due and is secured by their house, we reverse.

Under OCGA § 9-5-8, "[t]he granting and continuing of injunctions shall always rest in the sound discretion of the judge, according to the circumstances of each case. This power shall be prudently and cautiously exercised and, except in clear and urgent cases, should not be resorted to." "[W]e will not reverse the decision to

grant an interlocutory injunction unless the trial court made an error of law that contributed to the decision, there was no evidence on an element essential to relief, or the court manifestly abused its discretion." (Citation and punctuation omitted.) *Nissan North America, Inc. v. Walker-Jones Nissan, LLC*, 345 Ga. App. 447, 450 (812 SE2d 130) (2018). Further, "where there is no conflict in the evidence, the judge's discretion in granting or denying the interlocutory injunction becomes circumscribed by the applicable rules of law." (Citation and punctuation omitted.) *Shiva Management, LLC v. Walker*, 283 Ga. 338, 340 (658 SE2d 762) (2008).

*The loan*

On May 10, 2007, the Browns entered into a home equity agreement and disclosure statement (also known as a home equity line of credit, or "HELOC") with Oconee Federal's predecessor, Stephens Federal Bank.[1] Under the HELOC agreement, the Browns could obtain advances totaling $40,000 over the course of a 120-month draw period ending with a maturity date of May 15, 2017. During the

---

[1] This HELOC agreement constituted a refinance of an earlier HELOC agreement between the Browns and the bank. In addition to the HELOC agreement, the Browns executed an April 16, 2003 promissory note in favor of Stephens Federal Bank in the amount of $136,000. The note was secured by a security deed on the Browns' house, and its maturity date was May 1, 2018. While it appears that this 2003 loan is in default, the injunction and scheduled foreclosure relate to the 2007 HELOC agreement.

2

draw period, the Browns were required to make minimum monthly payments, which consisted of the accrued interest as of the closing date of each billing statement, and late fees would be assessed if they missed their minimum monthly payment. The agreement provided that the minimum monthly payments would not reduce the outstanding principal balance, and upon expiration of the draw period the Browns were required to pay the entire unpaid balance in one balloon payment. The agreement also provided that if the Browns defaulted by failing to make payments, the bank could, "after any required notices and to the extent permitted by law, terminate [the] Account and declare the entire balance of [the] Account immediately due and payable."

The Browns' indebtedness under the HELOC agreement was secured by their house pursuant to a security deed. The security deed provided that the Browns had the right to reinstate and cure any default by paying all sums due. Regarding this right to cure a default, the security deed provided that the Browns were entitled to the following notice of their right to cure before the bank accelerated the entire debt:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument or the Contract under which acceleration is permitted . . . . The notice shall specify: (a) the default; (b) the action required to cure

the default; (c) a date, not less than the minimum number of days established by Applicable Law from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. To the extent permitted by law, the notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. The security deed provided that if the default was not cured by the date specified in the notice, the bank could "require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale."

*Default*

The Browns took $40,000 in advances under the HELOC agreement. The Browns made several minimum monthly payments on the debt, generally paying only the minimum payment to cover interest, and these monthly payments averaged approximately $260 or $270. The Browns' last monthly payment was in May 2015. Around this time, the Browns submitted an application to modify their HELOC agreement and/or consolidate the debt with their 2003 loan. On September 18, 2015,

4

Oconee Federal notified the Browns that their application to modify the HELOC agreement and/or consolidate the debt with the 2003 loan had been denied, and reminded them of the need to make payments and bring the HELOC debt current in order to avoid foreclosure.

The Browns claim that: in phone conversations Oconee Federal employees told them their application would be approved and instructed them not to make payments while the application was pending; from approximately May 2015 to September 2015 Oconee Federal refused any payment whatsoever and returned several payment checks; and subsequently Oconee Federal improperly refused payment unless it was payment in full and included late fees and penalties. Oconee Federal employees deny telling the Browns not to make payments, and the record shows that while the Browns' application was pending and thereafter, Oconee Federal sent the Browns both monthly account statements detailing the payments due and late charges assessed, as well as numerous emails urging the Browns to make their payments.

On October 2, 2015, Oconee Federal's counsel notified the Browns that all communications concerning the debt should be directed to counsel. On November 20, 2015, counsel sent the Browns a letter stating that "[p]ursuant to the terms of the HELOC Oconee Federal is hereby exercising its right to accelerate the debt and

5

hereby demands payment in full" of $42,034.96. Counsel stated in the letter that Oconee Federal would not accept any payment for less than the entire debt owed. Apparently, this was the Browns' first notice of acceleration on the HELOC, and at the time Oconee Federal mistakenly believed that the HELOC agreement and security deed did not require Oconee Federal to provide the Browns notice of a right to cure their default before accelerating the entire debt. The Browns claim that around this time Oconee Federal would not accept any payment without them signing a release of liability, while Oconee Federal claims that it only insisted upon a release of liability if the Browns wanted an alteration of the HELOC agreement before making payments.

Although the Browns dispute the amount they owe Oconee Federal under the HELOC agreement and whether the amount should include late fees, penalties, and interest, they acknowledge that they owe some amount under the agreement and that Oconee Federal could foreclose pursuant to the security deed if the debt was not repaid. In the trial court, the Browns admitted that they have not tendered any payments to Oconee Federal since at least October 2015.

*Initial foreclosure proceedings and this lawsuit*

6

On January 29, 2016, Oconee Federal initiated foreclosure proceedings under the HELOC agreement and security deed, stating in a letter to the Browns that in the absence of payment in full of the amount due under the agreement, which it asserted was $42,683.11, it would foreclose on the Browns' house on March 1, 2016. In February 2016, the Browns filed this action against Oconee Federal and other defendants, seeking injunctive relief to enjoin the foreclosure and raising claims of wrongful foreclosure, breach of contract, and fraud. Subsequently, Oconee Federal cancelled the scheduled foreclosure, but reserved the right to reinitiate foreclosure proceedings.

In June 2016, the Browns filed a motion for an order directing funds to be deposited in the registry of the trial court. In the motion, the Browns alleged that they had been unable to make their regular monthly payments to Oconee Federal since May 2015 because Oconee Federal improperly refused to accept any tender of payment that did not include the total amount due under the HELOC agreement or late fees, penalties, and attorney fees. While the Browns disputed the exact amount owed under the HELOC agreement, they acknowledged they had financial obligations to Oconee Federal. The Browns requested that the trial court allow them to tender into the trial court registry the total amount owed under the agreement from May 2015

7

until May 2016, which they asserted was approximately $2,970, and authorize them to deposit all future monthly payments into the registry until final judgment was entered.[2]

Oconee Federal opposed the motion, arguing that the Browns were required to tender payment of the HELOC debt to it, not the trial court registry. Oconee Federal requested that the Browns pay the amount owed under the HELOC agreement to bring the debt current and then continue to make monthly payments until it was paid off.

Following a hearing, the trial court granted the Browns' motion in September 2016, directing the trial court clerk to deposit a tendered check for $2,970 on the HELOC debt into the registry and to deposit future payments as they were made. The trial court ruled that the funds deposited would be held in the registry until there was an agreement among the parties or an order directing disbursement.[3] The trial court

---

[2] The Browns also requested that the trial court allow them to tender into the registry the amount they owed under the 2003 loan.

[3] The Browns tendered funds into the registry in September 2016 and April 2017. At the time of the March 2018 hearing on the Browns' motion for an interlocutory injunction, it appears the Browns had tendered $4,834.43 on the HELOC debt and $25,848.69 on the 2003 loan.

did not instruct the Browns on whether they should deposit payments or how much any payments should be.

In April 2017, the Browns filed a third amended complaint against Oconee Federal and other defendants.[4] In the complaint, the Browns sought injunctive relief to enjoin any foreclosure and a declaratory judgment regarding the amount they owed Oconee Federal and whether they were in default. The Browns also raised claims of breach of contract, fraud, negligence, violations of the Georgia Fair Lending Act, OCGA § 7-6A-1 et seq., and violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, and they requested punitive damages and attorney fees. The crux of the Browns' complaint was that Oconee Federal had caused or encouraged any default by telling them not to make payments, refusing payments unless they were full payments that included late fees and penalties, improperly handling their application to modify the HELOC agreement, and improperly accelerating the HELOC debt.

*Resumption of foreclosure proceedings and the motion for an injunction*

---

[4] The Browns also named as defendants Oconee Federal Financial Corp., Stephens Federal Savings and Loan Association, Brian C. Ranck, and Sanders, Ranck, & Skilling, P.C. Oconee Federal Financial Corp. is the holding company for Oconee Federal. Brian C. Ranck previously represented Oconee Federal in this dispute as an attorney with Sanders, Ranck, & Skilling, P. C. Ranck and the law firm have been dismissed from the underlying case with prejudice.

After providing advance notice on February 16, 2018, Oconee Federal resumed foreclosure proceedings on March 2, 2018, citing the Browns' failure to repay their debt under the HELOC agreement in full by the maturity date of May 15, 2017. The Browns then filed a motion for an interlocutory injunction to enjoin the foreclosure, arguing that the HELOC debt and security deed were not then due or enforceable and that there were questions of fact regarding what amount would be owed when they were due. The Browns asserted that because Oconee Federal had prevented them from making payments and told them not to make payments, Oconee Federal had made it impossible for them to perform under the HELOC agreement and security deed, Oconee Federal was estopped from enforcing the agreement and deed, and the Browns were entitled to an equitable extension of the due date. Oconee Federal responded that the Browns were not entitled to an injunction unless they tendered to it the amount due under the HELOC agreement. At a March 19, 2018 hearing on the motion, Oconee Federal asserted that the Browns then owed $51,786.27 under the agreement – $39,930.22 in principal, $9,409.08 in interest, and $2,446.97 in late fees – and submitted documentation in support of this figure.

On April 2, 2018, the trial court issued an order enjoining the foreclosure, conditioned upon the Browns' immediate payment of $2,700 into the trial court

10

registry, and their subsequent payment of $1,613 into the registry on the 15th day of every month until further order. According to the trial court, the $2,700 payment represented the combined monthly payments due on the HELOC debt since the Browns' last deposit into the registry in April 2017; and the $1,613 monthly payments represented the combined monthly payments due on the 2003 loan and the HELOC debt. The trial court explained that the Browns should not continue to live in their house without making some sort of payments, but that the case should proceed without a foreclosure in the middle of it, which would complicate matters and create damages against Oconee Federal if a jury found in favor of the Browns.[5] The trial court ruled that the money would be held in the registry until further order. The Browns made the payments as required by the trial court. Oconee Federal then filed this appeal of the injunction.[6]

*Oconee Federal's Appeal*

---

[5] Subsequently, the trial court denied Oconee Federal's motion for summary judgment, and Oconee Federal's appeal of that ruling is currently pending. See Case No. A19A0040.

[6] The grant or denial of injunctive relief is directly appealable. See OCGA § 5-6-34 (a) (4); *Jones v. Peach Trader, Inc.*, 302 Ga. 504, 511 (III) (807 SE2d 840) (2017).

Oconee Federal argues that the trial court erred in issuing the injunction because the Browns were required to tender the amount owed under the HELOC agreement to Oconee Federal in order to avoid foreclosure. Oconee Federal asserts that there is undisputed evidence that the HELOC loan has matured and the debt remains unpaid. We agree and reverse the injunction.

As the Browns' debt to Oconee Federal under the HELOC agreement has matured, the Browns were required to tender payment of the amount due to Oconee Federal in order to obtain an injunction enjoining foreclosure, but they have not done so. "[I]n a typical wrongful foreclosure action, the plaintiff is required to tender the amount due under the security deed and note in order to maintain an action in equity." *Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Community Trust*, 298 Ga. 221, 236 (4) (a) (780 SE2d 311) (2015) (hereinafter "*Metro Atlanta Task Force*"). In addition, tender, when required, must be made to the lender, not the trial court. See *P. B. R. Enterprises, Inc. v. Perren*, 243 Ga. 280, 283 (5) (253 SE2d 765) (1979); *Harpe v. Stone*, 212 Ga. 341 (1) (92 SE2d 522) (1956). Here, the trial court's order that payments be deposited into the registry until further order does not result in a tender to Oconee Federal. See *Perren*, supra, 243 Ga. at 283 (5) ("The fact that the trial judge, as a condition for the grant of the temporary injunction, required payment

12

into the registry of the court of the installments due under the defendants' mortgage and the monthly installments due thereon until further order of the court does not constitute tender to the defendants.").

This is a typical wrongful foreclosure action, and therefore the Browns were required to tender to Oconee Federal the amount owed under the HELOC agreement in order to obtain an injunction.

> The evidence relevant to [Oconee Federal's] right to exercise its power of sale is established by the unambiguous terms of the [HELOC agreement and] security deed, which plainly gives [Oconee Federal] the right to foreclose on the [p]roperty in the event the loan was not satisfied in full by the [May 15, 2017] maturity date. It is uncontroverted that the loan was not and never has been satisfied. Thus, [Oconee Federal] is merely exercising a right plainly given by the deed which the grantor executed to it.

(Citation and punctuation omitted.) *Walker*, supra, 283 Ga. at 340; see also *DuBarton Enterprises, LLC v. Appalachian Community Bank*, 304 Ga. App. 273, 273-274 (695 SE2d 748) (2010). In *Walker*, supra, 283 Ga. at 341, the Georgia Supreme Court held that the trial court abused its discretion in granting an interlocutory injunction enjoining a foreclosure sale because the lender had the legal right to foreclose under the terms of the loan agreement and security deed. Similarly, here Oconee Federal had

the legal right to foreclose under the HELOC agreement and security deed, as the HELOC debt has matured and remains unsatisfied, and the debt is secured by the Browns' house under the terms of the security deed. See *Benton v. Patel*, 257 Ga. 669 (362 SE2d 217) (1987) (trial court abused its discretion in granting an interlocutory injunction enjoining a foreclosure sale, where the borrower failed to maintain insurance as required by the plain and unambiguous terms of the security deed).

Further, in light of Oconee Federal's right to foreclose, the Browns were required to tender to Oconee Federal the amount owed under the HELOC agreement in order to enjoin the foreclosure. This Court and the Georgia Supreme Court have held that, in general, where the debt is in default at the time of foreclosure and the borrower has not tendered payment of the debt to the lender, the borrower is not entitled to an injunction enjoining foreclosure. See *Berry v. Government Natl. Mortg. Assn.*, 231 Ga. 503 (202 SE2d 450) (1973); *Stewart v. Suntrust Mortg., Inc.*, 331 Ga. App. 635, 640-641 (6) (770 SE2d 892) (2015). In *Stewart*, supra, 331 Ga. App. at 640 (6), this Court explained that "[h]e who would have equity must do equity, and give effect to all equitable rights in the other party respecting the subject matter of the suit. OCGA § 23-1-10. Under application of this maxim, before the complainant would be

14

entitled to equitable relief, she must do equity and tender the amount due under the security deed and note." (Punctuation omitted.)

While "tender is not an absolute rule," *Metro Atlanta Task Force*, supra, 298 Ga. at 236 (4) (a), this case does not present circumstances compelling a departure from this rule. Comparatively, for instance, in *Metro Atlanta Task Force*, supra, 298 Ga. at 236-237 (4) (a), the borrower alleged that the sale of promissory notes from the original lender to other entities was procured via improper actions of the defendants that constituted tortious interference with the borrower's relationships with its lenders and funding sources. The Georgia Supreme Court held that the trial court did not err in allowing the borrower's wrongful foreclosure claim to proceed in the absence of payment of the amounts owed on the notes. Id. at 237 (4) (a). The Supreme Court explained:

> The alleged tortious conduct in this case may have prevented the [borrower] from tendering its debt and is sufficient to create an exception to the tender requirement . . . . This is not a case like many others over the years, where a party sought to excuse its failure to tender on grounds like poverty, non-compliance with foreclosure procedures, or other acts not involving tortious interference with the funds that would potentially comprise the tender itself.

Id. at 237 (4) (a).

15

Here, the Browns maintain that they have been capable of first making the monthly payments and then paying the entire HELOC debt,[7] but claim they should not be required to pay the debt because Oconee Federal refused payments, failed to send a right-to-cure letter, denied their application to modify the HELOC agreement, and included late fees and penalties in the amount owed. Compare *West v. Koufman*, 259 Ga. 505 (384 SE2d 664) (1989) (trial court acted within its discretion in granting an injunction enjoining foreclosure where borrower could be declared in default if a lien was filed against the property and borrower alleged lender had actively solicited third parties to file liens against the property; such conduct constituted a breach of the duty of good faith and fair dealing implied in all contracts). These claims do not excuse the Browns from the tender requirement, as Oconee Federal's supposed conduct did not constitute prevention of or a compromise of any proper tender by the Browns.

Regarding Oconee Federal's purported prior refusal to accept payments in 2015, it is true that "[t]ender of an amount due is waived when the party entitled to payment, by declaration or by conduct, proclaims that, if tender of the amount due is made, an acceptance of it will be refused." (Citation and punctuation omitted.)

---

[7] Indeed, since this dispute began, the Browns sold a separate property and received approximately $50,000, and they took out a loan to buy a new sports car worth approximately $30,000.

16

*Machen v. Wolande Management Group, Inc.*, 271 Ga. 163, 165 (1) (517 SE2d 58) (1999). However, the HELOC debt matured and became due in full in May 2017, and since that time Oconee Federal has clearly demanded payment, but the Browns have made no payments to Oconee Federal. See *Mitchell v. Interbay Funding, LLC*, 279 Ga. App. 323, 325 (630 SE2d 909) (2006) (trial court properly granted lender summary judgment on borrowers' wrongful foreclosure claim, even though lender returned one monthly payment, because there was no evidence the lender would have rejected payments after the borrowers defaulted and because such payments were not made); *Hill v. Filsoof*, 274 Ga. App. 474, 476 (1) (618 SE2d 12) (2005) (where borrower made no proper tender and lender's responses to borrower's conditional tender did not show a proper tender would have been a useless formality, trial court properly granted lender's motion to dismiss borrower's claim to set aside the foreclosure sale). "[A] tender must be continuous," *Machen*, supra, 271 Ga. at 165 (1), and the Browns have not shown that they have tendered any payment to Oconee Federal after the HELOC debt matured or that Oconee Federal would have refused any such tender. See id. at 165 (1) ("[I]n order for an actual tender to be waived by [the creditor's] statement or conduct, it would first be necessary for [the debtors] to make an actual, present bona fide offer to pay that which is due.").

17

The Browns' claim that Oconee Federal did not provide proper notice of acceleration in 2015 is unavailing, as they have not shown how any such failure affected their ability to pay the HELOC debt upon maturity in 2017.[8] See *Calhoun First Natl. Bank v. Dickens*, 264 Ga. 285, 286 (2) (443 SE2d 837) (1994) ("The bank's failure to provide proper notice constituted a breach of the duty to fairly exercise the power of sale created by [OCGA] § 23-2-114. Having established duty and breach, however, [the borrower] still needed to show a causal connection between the lack of notice and the alleged injury.").

Furthermore, the Browns' claim that the amount owed is in dispute does not excuse them from the requirement that they tender payment to Oconee Federal. It is undisputed that the Browns owe some amount to Oconee Federal, but they have not tendered any payment to Oconee Federal since the debt matured. In *Mitchell*, supra, 279 Ga. App. at 325, this Court held that even if a bona fide controversy existed as to the debtors' liability for insurance charges under a promissory note and security deed, the debtors "were obligated to pay the monthly sum they admittedly owed under the promissory note," and in light of their failure to pay this sum, the trial court

---

[8] We note that on August 31, 2016, Oconee Federal's counsel sent a letter to the Browns stating that foreclosure could be avoided by curing the default on the HELOC debt and that the amount necessary to cure the default was $4,237.93.

18

properly granted the lender a writ of possession and summary judgment on the debtors' claim for wrongful foreclosure. See also *Hill*, supra, 274 Ga. App. at 476 (1) ("Given that [the borrower] admittedly owed the principal amount of the note but conditioned his tender upon [the lender's] prior surrender of the instruments securing the note, [the borrower] did not make the payment or tender under the note required for him to seek the equitable remedy of setting aside the foreclosure . . . ."). As the Georgia Supreme Court has explained:

> Under the long recognized and codified maxim that '[h]e who would have equity must do equity,' before a borrower who has executed to the same grantee two deeds to secure debts can have affirmative equitable relief to set aside a sale by the creditor under exercise of the power of sale contained in the deeds, . . . and an injunction against the creditor and the persons claiming under him to prevent interference with the debtor's possession of a portion of the property, such debtor must pay or tender to the creditor the principal and interest which he admits to be due, and would not be relieved of this duty by reason of the fact that the creditor was demanding of him more than he owed.

(Citation omitted.) *Harpe*, supra, 212 Ga. at 341 (1).

Where there is a bona fide controversy over the amount required to satisfy the debtor's obligation, the debtor should still be required to tender such sums as are admittedly due under the note. See *Grebel v. Prince*, 232 Ga. App. 361, 366 (2) (501

19

SE2d 538) (1998). Here, because the Browns have not tendered to Oconee Federal the amount that is admittedly or undisputably due under the HELOC agreement – which, at a minimum, would include the outstanding principal – they are not entitled to an injunction enjoining foreclosure.

Nor are the Browns excused from the tender requirement based on their claims that Oconee Federal prevented them from paying their debt by denying their application to modify the HELOC agreement and in reporting them as delinquent to credit agencies. First, as discussed above, the Browns indicated that they are capable of paying the debt. Second, this Court has previously rejected similar claims:

> [The borrower] further claims that the trial court should have enjoined [the lender] from exercising its right to foreclose due to its allegedly fraudulent failure to enter into another loan agreement with [the borrower] so that it could satisfy the first loan. This claim is without merit.

> Any subsequent actions on the part of [the lender] that [the borrower] claims have made it harder to repay the loan are immaterial, as [the lender] had the right, under the plain terms of the deed, to exercise its power of sale *immediately upon the default*. While [the borrower] contends that it is now prevented from securing a loan that would enable it to repay the loan from the bank, [the borrower's] post hoc efforts to

20

satisfy the loan are irrelevant to [the borrower's] right to exercise its power of sale.

(Citation and punctuation omitted; emphasis supplied.) *DuBarton Enterprises, LLC*, supra, 304 Ga. App. at 274; see also *Ga. Investments Intl., Inc. v. Branch Banking and Trust Co.*, 305 Ga. App. 673, 675 (1) (700 SE2d 662) (2010) ("A lender's refusal to make a second loan, or even misrepresentations that it would make a second loan, does not bar the lender from recovery of the amount owed under the first loan.") (citation and punctuation omitted).

Similarly unavailing is the Browns' related claim that Oconee Federal is estopped from collecting on the HELOC debt due to its purported promises regarding the application to modify the debt. "Promissory estoppel does not . . . apply to vague or indefinite promises, or promises of uncertain duration," *Ga. Investments Intl., Inc.*, supra, 305 Ga. App. at 675 (1), and the Browns have been unable to point to any specific terms of the proposed agreement or the purported approval of their application to modify the debt.

In conclusion, the Browns are still living in their house, despite the fact that they have defaulted under the HELOC agreement and security deed and have since failed to tender payment of their debt to Oconee Federal. Furthermore, none of the

Browns' claims excuse them from the requirement that they tender payment to Oconee Federal. Accordingly, we must reverse the trial court's grant of the interlocutory injunction enjoining the foreclosure sale.

*Judgment reversed. McMillian and Reese, JJ., concur.*